**Writ of Mandamus is Conditionally Granted; Opinion Filed December 3, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01457-CV

### IN RE SOUTHPAK CONTAINER CORPORATION AND
### CLEVELAND STEEL CONTAINER CORPORATION, Relators

**Original Proceeding from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-11-05714-C**

## OPINION

Before Justices O'Neill, Lang-Miers, and Evans
Opinion by Justice Evans

Relators filed this mandamus proceeding after the trial court signed an order granting a motion to compel the deposition of their outside counsel. We conclude the trial court abused its discretion as to a portion of the order, and relators have no adequate remedy by appeal. We therefore conditionally grant the writ of mandamus in part and deny it in part.

In this suit for personal injury arising from a pedestrian/automobile collision, real party in interest Jon Rice seeks to depose Robert McIntyre, counsel for relators. In his operative petition, real party in interest alleges that the automobile in question was driven by Brett Alan Slagle; Slagle was driving while intoxicated; Slagle was employed by one or both relators; the automobile was owned by one or both relators; and relators were negligent and grossly negligent in hiring and supervising Slagle. The petition also includes allegations regarding the operation of the relator corporations, and requests that the corporate veil be pierced to impose liability on

the individual officers, directors, and shareholders of relators. In discovery, real party in interest seeks information about the operation of relators, including the dissolution or termination of relator SouthPak.

Relators concede that McIntyre has served as corporate secretary for both relators in addition to serving as their outside counsel. Real party in interest filed a motion to compel McIntyre's deposition, which the trial court granted in part. The trial court's order provides that McIntyre must testify on three specific topics:

> 1) Cleveland Steel and SouthPak being separate and/or one single company including information learned from Cleveland Steel Board meetings;

> 2) Communications and filings sent and received from the Texas Secretary of State regarding SouthPak certificate of termination filed in 2011; and

> 3) Non-privileged facts as to his Slagle incident investigation including the beginning and ending dates of such investigation.

In order to obtain mandamus relief, relators must show both that the trial court has abused its discretion and that they have no adequate appellate remedy. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). Relators have met this burden only as to a portion of the trial court's order.

Relators raise three issues in their petition for writ of mandamus. First, they contend that real party in interest did not meet the standards for taking an "apex deposition" set forth in *In re Alcatel U.S.A., Inc.*, 11 S.W.3d 173, 176 (Tex. 2000) (orig. proceeding). Second, they argue that the trial court order permits discovery of information protected by the attorney-client privilege. Third, they assert that they have no adequate remedy by appeal, so that mandamus is appropriate.

In *Crown Central Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 126 (Tex. 1995) (orig. proceeding), the court addressed the guidelines for depositions of "a corporate officer at the apex

of the corporate hierarchy." As explained in *In re Alcatel*, a party initiates the proceedings outlined by *Crown Central* by moving for protection and filing the corporate official's affidavit denying any knowledge of relevant facts. *In re Alcatel,* 11 S.W.3d at 175. The trial court then "evaluates the motion" and determines whether the party seeking the deposition has "'arguably'" shown that the official has "'unique or superior personal knowledge of discoverable information.'" *In re Alcatel*, 11 S.W.3d at 176 (quoting *Crown Cent.*, 11 S.W.3d at 128). If this showing is made, then "the trial court should deny the motion for protection and the party seeking discovery should be entitled to take the apex depositions." *Id.*

Here, relators filed a response to real party in interest's motion to compel supported by McIntyre's affidavit. In the affidavit, McIntyre testified that he "participated in the filing" of the certificate of termination for SouthPak. He also stated, however, that the termination of SouthPak "is not relevant or related to this lawsuit." He testified that he has "no knowledge concerning the purpose, operation, or assets of South Pak Container Corporation beyond what was described by Dennis Puening in his depositions and in the written discovery responses provided by South Pak Container Corporation to Plaintiff." He stated that he had no knowledge of relator Cleveland Steel's day-to-day operations. He also testified that all of his knowledge regarding facts relevant to this lawsuit was acquired "solely and exclusively in my capacity as an attorney representing Cleveland Steel Container Corporation."

Before filing the motion to compel McIntyre's deposition, real party in interest deposed a corporate representative of SouthPak, Dennis Puening. Puening testified that SouthPak was terminated after "Mr. McIntyre advised the existence of SouthPak was not necessary." The first discussion of termination took place "shortly after Mr. McIntyre became outside counsel for the corporation," and the termination was done by McIntyre six months after Rice's accident. Real party in interest argues that Puening's testimony "arguably contradicts" McIntyre's affidavit.

While McIntyre and Puening testified consistently that McIntyre participated in the termination of SouthPak, and that the termination was not related to real party in interest's claim, the trial court could have found from this evidence that as SouthPak's corporate secretary, McIntyre had unique or superior personal knowledge regarding the termination of SouthPak. In addition, there was no showing that communications with the Texas Secretary of State were or could be privileged. Therefore, the trial court did not err by ordering that McIntyre testify about "[c]ommunications and filings sent and received from the Texas Secretary of State regarding South Pak certificate of termination filed in 2011," the second category in the challenged order. In addition, the trial court did not err in ordering that McIntyre could be deposed regarding information communicated to him *as corporate secretary* of Cleveland Steel Corporation about "Cleveland Steel and SouthPak being separate and/or one single company," as described in the first category of the challenged order.

But the evidence presented to the trial court also shows that information was communicated to and from McIntyre as the attorney for both relators in anticipation of and after the filing of this lawsuit. These communications are "work product" as defined in Rule 192.5, Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 192.5(a) (defining work product). Further, McIntyre may claim the attorney-client privilege for communications "made for the purpose of facilitating the rendition of professional legal services" to his clients, as provided in Rule 503, Texas Rules of Evidence. *See* Tex. R. Ev. 503(c) (who may claim privilege). Under these rules, real party in interest may not discover information communicated to and from McIntyre as counsel for relators. *See* Tex. R. Civ. P. 192.5; Tex. R. Ev. 503. Although the first category of information in the trial court's order is discoverable when communicated to McIntyre as corporate secretary, information when communicated to him as the corporation's attorney would

be privileged. The order regarding the first category of information was not limited to non-privileged information, as it should have been.

The third category of the trial court's order permits discovery of "non-privileged facts as to [McIntyre's] Slagle incident investigation." McIntyre's uncontradicted testimony is that he is outside counsel, was hired after the accident in question, acquired knowledge regarding facts relevant to the litigation solely as a lawyer and after he and his firm were engaged "to prepare a defense to likely claims against it by an individual now identified as Jon Rice." Real party in interest presents no argument that the knowledge acquired by McIntyre was not privileged, that the privilege was waived, or that his communications with relators regarding his investigation of the accident were not privileged.

Confidential communications between an attorney and client "promote effective legal services," which "in turn promote[ ] the broader societal interest of the effective administration of justice." *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 160 (Tex. 1993) (orig. proceeding). While this interest must be balanced against "the aim of the modern discovery process . . . to yield full and complete information regarding the issues in dispute," *id.*, waiver of the privilege "should not lightly be found." *Id.* at 163 (discussing offensive use waiver of the attorney-client privilege). It is not enough that relators are protected by the rules of civil procedure and evidence from producing privileged information. *See* TEX. R. CIV. P. 192.5 (work product privilege); TEX. R. EV. 503 (attorney-client privilege). Nor is it enough that the trial court is obligated to conduct the trial "to facilitate the making of claims of privilege without the knowledge of the jury" and not to allow comment on, or inferences drawn from, the invocation of privilege. *See* TEX. R. EVID. 513(a), (b). Thus, even though relators do not face a realistic possibility of their lawyer's repeated invocation of privilege being read or played to the jury or any argument to the jury based on his assertion of privilege, real party in interest has not

provided a reason that outside litigation counsel should be subjected to deposition at all. *See In re Exxon Mobil Corp.*, 97 S.W.3d 353, 357 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (citing *Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996)) (attorney-client privilege "attaches to the complete communication between attorney and client, including both legal advice and factual information"); *see also In re Baptist Hosps. of Southeast Texas*, 172 S.W.3d 135, 145 (Tex. App.—Beaumont 2005, orig. proceeding) (compelling deposition of opposing party's attorney of record concerning subject matter of litigation is inappropriate under most circumstances; attorney's activities in prosecuting client's claims fell within work product definition).

Accordingly, we conditionally grant the relators' petition for writ of mandamus in part as to the omission of an exclusion of privileged information from the scope of paragraph 1 of the trial court's order and as to the entirety of paragraph 3. A writ will issue only in the event the trial court fails to (a) vacate the portion of paragraph 1 of its "Order Granting Plaintiff's Motion to Compel Deposition of Robert McIntyre" that requires testimony on matters protected by the attorney-client and work product privileges, (b) vacate paragraph 3 of its order, and (c) enter an order excluding privileged information from the scope of paragraph 1 and eliminating paragraph 3 from the topics on which Robert McIntyre may be questioned at his deposition.

131457F.P05

/David Evans/
DAVID EVANS
JUSTICE

–6–