**Conditionally Grant and Opinion Filed August 26, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00813-CV

## IN RE TEXAS HEALTH RESOURCES AND TRUMBULL INSURANCE COMPANY, Relators

**Original Proceeding from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 15-02252**

## OPINION

Before Chief Justice Wright and Justices Bridges and Brown
Opinion by Chief Justice Wright

This petition for writ of mandamus concerns the trial court's July 1, 2015 order that requires production of a portion of a January 15, 2015 note maintained in the file related to a claim on an insurance policy written by Trumbull Insurance Company. After inspecting the document *in camera*, we conclude the trial court abused its discretion in ordering portions of the document produced.

### *Factual and Procedural Background*

This is a lawsuit filed by Nina Pham, a nurse who contracted the Ebola virus while caring for a patient at Texas Health Presbyterian Hospital Dallas. Shortly after learning Pham had contracted the Ebola virus, Presbyterian filed a first report of injury on behalf of Pham. Pham is presently receiving workers' compensation benefits.

Texas Health Resources is the corporate parent of Presbyterian. Pham contends that Texas Health Resources failed to properly prepare its affiliated hospitals, including Presbyterian, to respond to Ebola and that Texas Health Resources, in an attempt to mitigate the economic and reputational damage of the incident, improperly invaded Pham's privacy while she was being treated as a patient at Presbyterian. She has brought causes of action against Texas Health Resources for negligence, negligent undertaking, gross negligence, premises liability, invasion of privacy, and fraud. Texas Health Resources is the only defendant in the case.

In conjunction with its answer, Texas Health Resources filed a plea in abatement and plea to the jurisdiction in which it contended that Pham's claims should be dismissed or abated because the Texas Department of Insurance Division of Workers' Compensation has exclusive jurisdiction over the question whether Texas Health Resources was Pham's employer under the Texas Workers' Compensation Act at the time she contracted the Ebola virus. Around the same time, Trumbull Insurance Company, the insurer who wrote the single insurance policy that provides workers' compensation and employers' liability coverage to Texas Health Resources and to Presbyterian as an additional insured under the policy issued to Texas Health Resources,[1] sought a benefit review conference with the Division of Workers' Compensation concerning whether Texas Health Resources and Presbyterian were Pham's co-employers for purposes of the workers' compensation act.[2] Pham sought a temporary restraining order and temporary

---

[1] The policy in this case is a "standard policy," which is the form of policy approved for use by the Texas Department of Insurance. TEXAS BASIC MANUAL OF RULES, CLASSIFICATIONS AND EXPERIENCE RATING PLAN FOR WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY INSURANCE Rule I(B). Part One of the standard policy provides coverage for the statutory obligation of an employer to provide benefits for employees as required by the workers' compensation law. *Id.* Rule II(A)(1). Part Two of the standard policy provides employers' liability coverage for the legal obligation of an employer to pay damages because of bodily injury by accident or disease sustained by an employee if the injury arises in the course of employment. *Id.* Rule II(B)(1), (2). Texas workers' compensation insurance may be provided only by a standard policy or by a certified Texas self-insurance policy. *Id.* Rule II(A)(2). Purchase of a standard policy allows an employer to receive the protections afforded to workers' compensation subscribers under the Texas Labor Code. *See generally* TEX. LAB. CODE ANN. §§ 406.002, 406.003, 406.052 (West 2015).

[2] The parties dispute whether Texas Health Resources and Presbyterian were co-employers of Pham for purposes of the Texas Workers' Compensation Act. Under the workers' compensation act, "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee." TEX. LAB. CODE ANN. § 408.001(a) (West 2015). The entity with the "right to control" the employee at the time of an accident is the "employer" for workers' compensation purposes. *See Archem v. Austin*

injunction seeking, among other things, to prevent Texas Health Resources or Presbyterian from claiming or designating Pham as an employee of Texas Health Resources before any other adjudicative body in a manner that would affect the case in the trial court, to restrain the benefit review conference, and to prohibit Texas Health Resources and Presbyterian from submitting any of the matters then pending before the trial court for adjudication before any other court, tribunal, or administrative agency. Pham also served Texas Health Resources and Trumbull with subpoenas seeking the testimony of corporate representatives of Texas Health Resources and Trumbull at the temporary injunction hearing and requiring the production of documents prior to the date of the temporary injunction hearing.

The trial court granted and subsequently extended by agreement of the parties a temporary restraining order prohibiting Texas Health Resources and Trumbull from "undertaking any act or attempt to adjudicate whether THR and Presbyterian are co-employers of Nina Pham for purposes of application of the Workers' Compensation Act in front of the Division of Workers Compensation." The trial court also ordered discovery, including the production of documents, on the issues raised in the plea in abatement, plea to the jurisdiction, and application for temporary injunction. The trial court ordered that the discovery take place before the expiration of the temporary restraining order.

Among the documents responsive to the subpoena was a January 15, 2015 claim note, specifically the 1/15/2015 — 1:17 p.m. entry on pages 6–8 of the "Part II —Claim Diary Notes," that is the subject of this petition for writ of mandamus. The note was written by Lisa Zacchia, a

---

*Indus., Inc.*, 804 S.W.2d 268, 269 (Tex. App.—Houston [1st Dist.] 1991, no writ). The concept of joint control shared by dual or co-employers has been found applicable in workers' compensation insurance cases. *See Port Elevator-Brownsville v. Casados*, 358 S.W.3d 238, 242 (Tex. 2012) (concluding employee of staffing company was covered by both temporary employer's and staffing company's workers' compensation insurance); *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 143 (Tex. 2003) (holding that exclusive-remedy provision applied to both temporary staffing company and client company); *Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d 835, 844 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (upholding contractual provision in which two companies expressly agreed to be co-employers for workers' compensation insurance purposes, and extending protection of exclusive-remedy provision to both). When two entities have joint control over an employee's work, they are co-employers. *See White v. Liberty Eylau Sch. Dist.*, 880 S.W.2d 156, 159 (Tex. App.—Texarkana 1994, writ denied).

claims adjustor employed by The Hartford. The mandamus record shows that Hartford and Trumbull are affiliated entities and Hartford administers policies and processes claims for Trumbull. The note documents a conversation among Zacchia, Don Collins, associate general counsel for Texas Health Resources, and Liz Spurgeon, risk manager for Texas Health Resources. At least with respect to some portions of the note, the note does not reveal whose thoughts are reflected in the note.[3] According to Trumbull, the note was included in a file maintained to document communications and activities related to the investigation and defense of claims under the employers' liability portion of the Texas Health Resources workers' compensation and employers' liability policy. All of the notes were made after Pham sent a demand letter outlining her claims to Texas Health Resources and Presbyterian. The note that is the subject of the petition for writ of mandamus was made before Pham filed suit against Texas Health Resources. Texas Health Resources and Trumbull objected to the production of the note and certain other notes in the same file, asserted the lawyer–client privilege and work product privilege, and withheld the documents.

Pham argued that the communications withheld were discoverable and sought to compel their production. Following a hearing and inspection of the withheld documents, the trial court signed an order compelling production of only portions[4] of a single note—the January 15, 2015 1:17 p.m. claim note that is the subject of this petition for writ of mandamus.

### *Availability of Mandamus Relief*
Pham argues that mandamus relief is not appropriate because interlocutory review of the trial court's determination of the application for temporary injunction provides an adequate

---

[3] Based on questions asked by the trial judge at the hearing on the motion to compel production, Pham suggests that Ken Kramer, also assistant general counsel for Texas Health Resources, and Dean Butler, an underwriting specialist for Hartford Fire, were also parties to the conversation. No evidence in the mandamus record supports this assertion.

[4] Texas Health Resources and Trumbull argue that if a court concludes that a document is covered by the lawyer–client privilege the entire document is subject to the privilege and a court may not order portions of the document produced even if the portions ordered produced do not reference privileged matters. Because of our disposition of the remainder of Texas Health Resources' points, we do not reach this argument.

appellate remedy for the harm that relators contend they will suffer if the trial court's order is allowed to stand. We reject this argument. Mandamus may issue when a trial court erroneously orders the production of privileged information, and no other adequate remedy at law exists. *Walker v. Packer,* 827 S.W.2d 833, 843 (Tex. 1992) (orig. proceeding). An order that erroneously compels disclosure of privileged information, such as documents covered by the attorney–client privilege, that materially affects the rights of the aggrieved party cannot be cured by reversal on appeal. *Walker*, 827 S.W.2d at 843. As our sister court has noted, "Clearly, once privileged information is disclosed, there is no way to retrieve it; therefore, mandamus is an appropriate remedy to prevent the publication of confidential documents." *Pittsburgh Corning Corp. v. Caldwell*, 861 S.W.2d 423, 424 (Tex. App.—Houston [14th Dist.] 1993, no writ). And the supreme court has pointed out that a party asserting privilege who is forced to disclose documents and await appellate review "would lose the benefit of the privilege if the documents at issue are disclosed, even if its assertions of privilege were later upheld on appeal." *In re E.I. DuPont de Nemours*, 136 S.W.3d 218, 222–23 (Tex. 2004) (orig. proceeding).

Nothing in the mandamus record indicates that the trial court or the parties have agreed to stay the effect of the trial court's order pending determination of any interlocutory appeal that may be filed from the ultimate order on the application for temporary injunction. In fact, to the contrary, the petition for writ of mandamus states that because the trial judge believed that the requested discovery was relevant to Pham's request for injunctive relief, the trial court stayed the implementation of the order compelling disclosure only on the condition that relators agree to the extension of the temporary restraining order. For that reason, we cannot conclude that the interlocutory appeal of the trial court's order with respect to the temporary injunction will provide an adequate opportunity for appellate review of the order.

We also reject Pham's suggestion that to the extent that the note discusses strategic considerations with respect to the issue of co-employment, that strategy has already been revealed in this litigation and thus Texas Health Resources will not be harmed by the revelation of any privileged conversations surrounding those strategic decisions. The argument could provide an equally compelling basis for arguing that Pham's communications with her attorneys should be revealed to the extent that they concern matters of litigation strategy that have already been implemented by Pham in this case.

### *Lawyer–Client Privilege*

Pham contends the lawyer–client privilege is inapplicable to the January 15, 2015 claim note because the note was written by a third party, insurance claims adjustor Lisa Zacchia, and was not between attorneys and clients. There is no general privilege between insurance companies and their insureds. *In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 53 (Tex. 2012). The absence of a general insurer–insured privilege does not preclude the applicability of other recognized privileges that arise in the course of the insurer–insured relationship, however.

Confidential communications between an attorney and client "promote effective legal services," which "in turn promote[ ] the broader societal interest of the effective administration of justice." *In re Southpak Container Corp.*, 418 S.W.3d 360, 364 (Tex. App.—Dallas 2013, orig. proceeding) (quoting *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 160 (Tex. 1993) (orig. proceeding)). Rule 503 of the Texas Rules of Evidence provides that a client may refuse to disclose and prevent any other person from disclosing "confidential communications to facilitate the rendition of professional legal services to the client: . . . between the client's representatives or between the client and the clients' representative." TEX. R. EVID. 503(b)(1)(D).[5] A

---

[5] Because we conclude that the parties to the note that is the subject of this petition were all either clients or client representatives as those terms are defined in the Texas Rules of Evidence, we do not reach Texas Health Resources and Trumbull's alternate arguments that the joint client or the allied litigant doctrines apply to the communication. *See* TEX. R. EVID. 503(b)(1)(C).

communication is "confidential" if it is not intended to be disclosed to third persons other than those to whom disclosure is made "in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." TEX. R. EVID. 503(a)(5). "A 'client' is a person, public officer, or corporation, association, or other organization or entity—whether public or private—that: (A) is rendered professional legal services by a lawyer; or (B) consults a lawyer with a view to obtaining professional legal services from the lawyer." TEX. R. EVID. 503(a)(1). A "client's representative" includes "(A) a person who has authority to obtain professional legal services for the client or to act for the client on the legal advice rendered; or (B) any other person who, to facilitate the rendition of professional legal services to the client, makes or receives a confidential communication while acting in the scope of employment for the client." TEX. R. EVID. 503(a)(2). Subpart A of section 503(a)(2) adopts what is known as the "control group" test for determining who falls within the coverage of the privilege afforded to communications with client representatives, while subpart B adopts the "subject matter" test. *In re Sea Mar Mgmt., Inc.*, No. 14-98-01095-CV, 1999 WL 33219365, at *3 (Tex. App.—Houston [14th Dist.] Jan. 28, 1999, orig. proceeding) (not designated for publication). The subject–matter test protects a broader range of communications than the control–group test, including communications made by individuals outside the corporation's control group. *In re Avantel, S.A.*, 343 F.3d 311, 318 (5th Cir. 2003) (applying Texas law).

The lawyer–client privilege "protects not only confidential communications between the lawyer and client, but also the discourse among their representatives." *In re XL Specialty Ins. Co.*, 373 S.W.3d at 49–50. Under Rule 503(a)(2), if a person is authorized by the client to obtain legal services or act on legal advice on behalf of the client or to make or receive confidential communications with respect to legal services, that person is a client's representative even if the

person is not an employee of the client. *See, e.g.*, *In re Segner*, 441 S.W.3d 409, 412 (Tex. App.—Dallas 2013, no pet.) ("[A]lthough Carter is not an employee of the trustee's accounting firm, he was hired by the trustee and given authority to obtain and act on legal advice on behalf of the trustee.").

Insurance companies typically have the duty to conduct the defense of the insured under a liability policy, including the authority to select, employ, and pay the attorney. *See Nat'l Tank Co. v. Brotherton*, 851 S.W.2d 193, 199 (Tex. 1993) (orig. proceeding) ("[L]iability policies typically vest the insurer with authority to hire counsel and conduct the defense of the insured."); *Emp'rs Cas. Co. v. Tilley*, 496 S.W.2d 552, 558 (Tex. 1973). Such liability policies "typically give the insurer 'complete and exclusive' control of that defense," *Unauthorized Practice of Law Comm. v. Am. Home Assur. Co.*, 261 S.W.3d 24, 27 (Tex. 2008), including the ability to obtain professional legal services on behalf of the insured. For that reason, under the proper circumstances, communications between an insurer and its insured may be shielded from discovery by the lawyer–client privilege. *See In re XL Specialty Ins. Co.,* 373 S.W.3d at 53; *In re Fontenot*, 13 S.W.3d 111, 114 (Tex. App.—Fort Worth 2000, no pet.); *Caldwell*, 861 S.W.2d at 424–25.

The supreme court has held that with regard to workers' compensation policies the insurer is not a representative of the insured, however. *See In re XL Specialty Ins. Co.*, 373 S.W.3d at 54. The supreme court reasoned that under Texas law, in a workers' compensation case, "the insurer, not the insured, is the client and party to the pending action, and it retains counsel on its own behalf. In contrast, in a lawsuit involving a standard liability insurance policy, only the insured is a party to the case, and the insurer typically retains counsel on its insured's behalf." *Id.* Pham argues that the reasoning of *In re XL Specialty* applies equally to this case.

As the supreme court explained, the outcome in *In re XL Specialty* was based on the unique nature of workers' compensation claims. In Texas, a claim for workers' compensation is against the insurance carrier, not against the employer. *Id.* Thus, in defending a workers' compensation claim, the insurance carrier is not defending the employer, but rather is defending itself. *Id.* For that reason, in the circumstances presented by *In re XL Specialty*, the communications among the insurer and the employer were not privileged. *Id.*

Here, the mandamus record establishes that the insurer kept two different files of notes. The first file included notes regarding the adjustment of the workers' compensation claim. Those notes are not at issue. The note that is at issue here was—according to the affidavit evidence presented by Texas Health Resources and Trumbull—made in the course of investigating Texas Health Resource's claim under the employers' liability portion of the policy and included in the file opened for documenting activities related to that claim. Trumbull and Texas Health Resources argue that because the note ordered produced was made in the course of investigating the employers' liability claim, in which Trumbull represents the employer rather than itself as insurer, the holding in *In re XL Specialty* is not applicable to the note.

Employers' liability insurance provides coverage for an employers' legal obligation to pay damages because of bodily injury by accident or disease sustained by an employee if the injury arises out of or in the course of employment. TEXAS BASIC MANUAL OF RULES, CLASSIFICATIONS AND EXPERIENCE RATING PLAN FOR WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY INSURANCE Rule II(B)(1), (2). A noted treatise explains:

> Employers' liability insurance is traditionally written in conjunction with workers' compensation insurance and is intended to fill gaps by providing protection in those situations in which [the] employee has [the] right to bring [a] tort action despite provisions of [the] workers' compensation statute, or [the] employee is not subject to workers' compensation law, and generally these two types of coverage are mutually exclusive.

9A COUCH ON INS. § 132:57 n.34.

We agree that the reasoning of *In re XL Specialty* does not apply to cases involving employers' liability insurance coverage. Because a workers' compensation claim is brought directly against the insurance carrier, the insurer, not the employer, is directly responsible for paying the benefits. *In re XL Specialty Ins. Co.*, 373 S.W.3d at 54. In contrast, with regard to the claims in this case that may be subject to employers' liability coverage, "only the insured is a party to the case, and the insurer typically retains counsel on its insured's behalf." *Id.*

The evidence before the trial court showed that the January 15, 2015 claim note was a communication between Texas Health Resources and its insurer. The affidavit of Brian Corrigan, who is the director of claims for Trumbull[6] and who is Zacchia's supervisor, established that Trumbull issued a workers' compensation and employers' liability policy to Texas Health Resources and Presbyterian. According to Corrigan, the policy provided that Trumbull would defend claims that fell within the coverage provided by the employers' policy, which included claims for bodily injury by disease that arose out of and in the course of the injured employee's employment by the insured. Corrigan further testified that upon receiving Pham's demand letter on December 9, 2014, a claim file was opened for the employers' liability policy to maintain claim diary notes that included communications and documentation of the activities associated with the investigation and evaluation of Pham's claims and the defense of Texas Health Resources pursuant to the duty to defend under the employers' liability policy. Nothing in the mandamus record refutes this testimony.[7] The January 2015 claim note shows on

---

[6] Pham attempts to paint this statement as a fabrication because other evidence in the mandamus record shows that Hartford writes insurance policies through various affiliated entities including Trumbull and that Trumbull has no employees of its own. Corrigan did not swear he was employed as director of claims "by" Trumbull, but rather that he was employed as director of claims "for" Trumbull. His statement is consistent with the business model described. We also reject Pham's assertion that the involvement of Hartford employees in discussions concerning the case waived privilege because Hartford is a third-party to the insurer–insured relationship. The mandamus record refutes that contention.

[7] Pham argues that Texas Health Resources' insistence that it is Pham's co-employer and that the claims asserted in her lawsuit with respect to her illness are covered by workers' compensation insurance is inconsistent with the position that the note was made in connection with the investigation of a potential claim under the employers' liability portion of the policy. We disagree. Pham's demand letter raised the possibility that claims would be asserted that would ultimately be found to fall within both aspects of the coverage under the policy. The fact that Texas Health Resources has chosen to pursue a strategy which, if successful, would implicate coverage only under the workers' compensation aspect of

its face that it involved representatives of Texas Health Resources, including a lawyer, who were involved in the decision-making process regarding the defense of the claim and the adjustor who was working on the employers' liability claim. The claim note shows on its face that the note documented discussions of issues related to the defense of the claim. Taken together, this evidence established that the communication reflected in the claim note was a confidential communication protected by the lawyer–client privilege.

### *Crime–Fraud Exception*

Pham argues that the only confidence that could arguably be revealed by the January 2015 claim note is that Texas Health Resources knows her real employer was Presbyterian, not Texas Health Resources. She contends that the trial court's order was appropriate because the trial court could have reasonably concluded that the crime–fraud exception applies to the claim note because Texas Health Resources' adoption of that position amounted to fraud.

The crime–fraud exception to the lawyer–client privilege renders the lawyer–client privilege inapplicable "[i]f the lawyer's services were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." TEX. R. EVID. 503(d)(1). The apparent reason for the existence of the exception is an intention to avoid permitting an attorney to aid a client's fraudulent conduct by the attorney's silence. *In re Gen. Agents Ins. Co. of Am., Inc.*, 224 S.W.3d 806, 820 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding).

A party who asserts the crime–fraud exception must first establish a prima facie case of fraud, showing a violation sufficiently serious to defeat the privilege. *Freeman v. Bianchi*, 820 S.W.2d 853, 861 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding), *mand. denied sub*

---

the policy for the claims related to Pham's illness does not prevent Texas Health Resources from discussing the possibility of alternate outcomes and the legal issues pertinent to such a possibility with its insurer.

*nom. Granada Corp. v. Hon. First Court of Appeals*, 844 S.W.2d 223 (Tex. 1992). The prima facie case requirement is met when the party asserting the exception offers evidence establishing the elements of fraud and establishing that the fraud was ongoing or about to be committed when the privileged communication occurred. *In re Gen. Agents Ins. Co. of Am*, 224 S.W.3d at 820. Once a prima facie case of crime or fraud is established, the court must then find some valid relationship between the document in question and the prima facie crime or fraud. *Cigna Corp. v. Spears,* 838 S.W.2d 561, 569 (Tex. App.—San Antonio 1992, orig. proceeding).

Although Texas Health Resources and Trumbull argue that the trial court may not consider the documents themselves in determining whether the party seeking discovery has met the requirements of the crime–fraud exception, the majority of case law is to the contrary. *See In re Gen. Agents Ins. Co. of Am.*, 224 S.W.3d at 819 ("A court may look to the document itself to determine whether a prima facie case has been established."); *Cigna Corp.*, 838 S.W.2d at 569 (same); *Freeman*, 820 S.W.2d at 861 ("The documents themselves may be utilized to establish a prima facie case."). Indeed, as the supreme court has pointed out, when the documents themselves are the only evidence offered to establish an exception to a privilege, it is proper for a reviewing court to review the documents to determine if they clearly support the exception. *Granada Corp. v. Hon. First Court of Appeals*, 844 S.W.2d 223, 225 (Tex. 1992) (orig. proceeding). Thus we cannot conclude that the trial court abused its discretion in reviewing the documents *in camera* in this case.

The rules of evidence do not further define "to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." The El Paso Court of Appeals has taken a broad view of the crime–fraud exception, concluding that it extends not only to crimes and actionable common-law fraud, but also to attempts to perpetuate a fraud on the court. *See Volcanic Gardens Mgmt. Co. v. Paxson*, 847 S.W.2d 343, 347 (Tex.

App.—El Paso 1993, orig. proceeding) (concluding documents establishing an effort to attribute prior injuries to accident which formed basis of suit fell within crime–fraud exception). The El Paso court described the exception as encompassing, "all multifarious means which human ingenuity can devise and which are resorted to . . . to get advantage over another by false suggestions or by suppression of truth, and includes all surprise, trick, cunning dissembling, and any unfair way by which another is cheated." *Volcanic Gardens*, 847 S.W.2d at 347 (citation and internal quotation omitted); *accord In re Nat. Gas Pipeline Co. of Am.*, No. 07-00-0375-CV, 2000 WL 1644361, at *2 (Tex. App.—Amarillo Nov. 2, 2000, orig. proceeding) (not designated for publication) (concluding documents which showed client believed leases to be invalid yet sought to collect royalties fell within crime–fraud exception). On that basis the court reasoned, "[t]he crime/fraud exception comes into play when a prospective client seeks the assistance of an attorney in order to make a false statement or statements of material fact or law to a third person or the court for personal advantage." *Volcanic Gardens*, 847 S.W.2d at 348.

The lawyer–client privilege is intended to allow "unrestrained communication and contact between the lawyer and client in all matters in which the lawyer's professional advice or services are sought, without fear that these confidential communications will be disclosed, voluntarily or involuntarily, in any legal proceeding." *Huie v. DeShazo*, 922 S.W.2d 920, 922 (Tex. 1996) (orig. proceeding) (quoting *West v. Solito*, 563 S.W.2d 240, 245 (Tex. 1978)). We need not determine at this juncture whether the crime–fraud exception has a reach as broad as the expansive language of *Volcanic Gardens* might suggest. It is important to focus on the conduct that was at issue in *Volcanic Gardens*—the deliberate misrepresentation of the facts concerning the plaintiff's injury. Here, in contrast, whether Texas Health Resources is Pham's co-employer is ultimately a legal question. There is no suggestion in this case that Texas Health Resources is falsifying any factual matters related to Pham's employment. Rather, the dispute centers on

whether those facts can be construed to render Texas Health Resources a co-employer of Pham under the workers' compensation statute. Thus, the allegedly wrongful conduct that Pham argues merits application of the crime–fraud exception relates solely to the advocacy of a legal position. While certainly we could not condone the conduct of an attorney who would attempt to mislead a court into reaching an erroneous legal conclusion by taking a position inconsistent with the attorney's understanding of the law, our *in camera* review of the claim note the trial court ordered disclosed does not reveal the existence of an attempt to make a false statement of the law to the court. Therefore, we cannot conclude the crime–fraud exception supports the trial court's order.

### *Conclusion*

Because we conclude that the trial court abused its discretion in ordering production of the excerpts of the January 15, 2015 claim note identified in its July 1, 2015 Amended Order, we conditionally grant relators' petition for writ of mandamus and order the trial court to vacate the portion of the July 1, 2015 Amended Order that requires the production of the first three lines of the "1/15/2015 — 1:17 p.m." entry on pages 6–8 of the "Part II —Claim Diary Notes," up through the term "7184," that requires production of the portion of the second paragraph starting with the term "Pltf's" and ending with the term "Dallas," and that requires production of the last full paragraph, which starts with the term "I" and ends with the term "affected." A writ will issue only if the trial court fails to comply.

150813F.P05

/Carolyn Wright/
_____
CAROLYN WRIGHT
CHIEF JUSTICE

–14–