# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00271-CV

## In re Kalahari Resorts

## ORIGINAL PROCEEDING FROM TRAVIS COUNTY

## M E M O R A N D U M   O P I N I O N

In this original proceeding, relator Kalahari Resorts seeks mandamus relief from the trial court's March 25, 2024 order granting a motion to enforce and compel filed by the real parties in interest (March 2024 Order). The real parties in interest, Frenrick Lamont Cathey, Jessaciah A. Perez, and Daniel Tharp (collectively, "Real Parties"), sought to compel additional discovery about a potential conflict of interest between Kalahari and its co-defendant Jerome Whitmore, a Kalahari employee, that had resulted in the withdrawal of their trial counsel after the close of discovery. The motion to enforce and compel requested that the trial court hold Kalahari in contempt for its noncompliance with two prior discovery orders (the January 2024 Order and the November 2022 Order) and that it enforce those two orders by ordering a second deposition of Kalahari's corporate representative and by compelling Kalahari to produce certain insurance

documents responsive to the November 2022 Order and the subpoena duces tecum issued before the first deposition. The trial court granted the motion "in all things."[1]

Kalahari argues that the trial court abused its discretion because (1) Kalahari has already fully complied with the court's orders, (2) the Real Parties are not entitled to discover the reason for Kalahari's prior counsel's withdrawal, (3) by overruling Kalahari's objections and requiring a second deposition and further document production, the trial court is requiring Kalahari to produce information that is irrelevant, overly broad, and protected by the attorney–client and work-product privileges, and (4) the trial court did not perform the appropriate balancing test or make the proper findings for a sanctions order. For the reasons explained below, we conditionally grant the petition for writ of mandamus. *See* Tex. R. App. P. 52.8(c).

## BACKGROUND

The underlying case involves an automobile–pedestrian drunk-driving accident that occurred on December 1, 2020. Defendant Mario Martinez-Buenrostro crashed his vehicle into construction barriers, parked vehicles, and the Real Parties. The Real Parties were working in a construction zone on the side of the highway. Buenrostro was pronounced deceased at the scene. The Real Parties allege that Buenrostro worked as a bartender for Kalahari and had consumed multiple alcoholic beverages on the job in the hours before the accident. The Real Parties further allege that Buenrostro and Whitmore, who was also a Kalahari bartender, served

---

[1] The Real Parties also sought to have Kalahari pay the cost of obtaining expedited transcripts of the deposition and an award of attorneys' fees and costs incurred in bringing the motion to compel and enforce. *See* Tex. R. Civ. P. 215.2(b)(2), (8). The trial court expressly ordered that "Defendant Kalahari shall submit proposed dates for a second deposition of Ralph Gundrum within 5 days of this order and pay the cost of obtaining expedited transcripts of that deposition." No order setting an amount of attorneys' fees and costs to be paid by Kalahari was included in the mandamus record.

Buenrostro the drinks. Among other parties, the Real Parties sued Kalahari and Whitmore under theories of negligence, negligence per se, gross negligence, vicarious liability, and violations of the Texas Dram Shop Act.

For over a year, Kalahari and Whitmore were both represented by the same counsel, Chamberlain McHaney, PLLC. Then, in December 2023, Kalahari notified Chamberlain McHaney that it perceived a potential conflict of interest in the firm's dual representation of it and Whitmore that would require the firm's withdrawal from representation under Texas Disciplinary Rules of Professional Conduct 1.06 and 1.15. Subsequently, on December 29, 2023, Chamberlain McHaney moved to withdraw as counsel and substitute new separate counsel for both Kalahari and Whitmore. Kalahari and Whitmore also filed motions for continuance because trial was set for January 22, 2024, and the "case involves six claimants, tens of thousands of pages of medical records and discovery, approximately 3000 hours of surveillance video of the bar and resort, at least thirty-five expected trial witnesses, and approximately two dozen expert witnesses."

During the January 4, 2024 hearing on the motions, the Real Parties did not object to the withdrawal and substitution of counsel. The Real Parties objected to the motions for continuance "for the record" but stated that if the court was inclined to grant the motions, they requested the ability to depose Whitmore and a Kalahari representative to determine "if there is new discovery that would be relevant to [the Real Parties'] claims and cause of actions" because their depositions had been "taken some time ago and this is just something new that occurred post the discovery period." The Real Parties also requested a court-ordered second mediation, a new trial setting for July 8, 2024, and for the court to keep in place the deadlines from the docket-control order that had already passed. The trial court granted the requests for mediation and a new trial-date setting and signed an order granting the motions to withdraw and substitute

3

counsel on January 4.  On January 18, 2024, the trial court signed an order granting the motions for continuance, resetting the trial date for July 8, 2024, and ordering a second mediation (the January 2024 Order).  The court also ordered depositions of Whitmore and Kalahari's corporate representative "on the sole issue of new discovery regarding the conflict of interest that precipitated Defendants' prior counsel's motion to withdraw."

Kalahari designated its general counsel, Ralph Gundrum, as its corporate representative.  Before Gundrum's deposition, the Real Parties formally requested that Kalahari supplement its discovery responses and production in compliance with the trial court's November 2022 Order requiring it "to produce a copy of each primary, umbrella, and excess insurance policy or agreement, including the declarations page, which was in effect at the time of the collision on December 1, 2020, including all non-waiver agreements, reservation of rights letters, or other documents or communications regarding insurance coverage."  The Real Parties also served a subpoena duces tecum requiring Gundrum to produce all communications between him or Kalahari and Whitmore relating "to the conflict of interest that precipitated Defendants' prior Counsel to file a Motion to Withdraw."  Kalahari objected to the subpoena duces tecum as follows:

> [The subpoena duces tecum] seeks irrelevant documents of a potentially broader scope than the court ordered and is therefore overbroad. Defendant is unaware of any documents representing communications directly from Kalahari to or from Whitmore addressing the conflict of interest.  If any communications from prior counsel to Whitmore exist, such would be attorney-client and work-product privileged.

Kalahari also noted in its objections that the trial court's January 2024 Order limited the deposition to "new discovery regarding the conflict of interest that precipitated defendant's prior counsel's

4

motion to withdraw. Only facts are discoverable. Kalahari Resorts is not aware of any new relevant or operative facts occurring since the close of discovery."

During the deposition, Gundrum testified that his determination that a conflict existed was not based on "the discovery of any new facts" but instead on analysis of the different legal theories and different defense strategies available to Kalahari and Whitmore, in particular for the Dram Shop and negligence claims. He testified that the potential conflict was first brought to his attention by a representative in Kalahari's insurance tower and that he subsequently discussed it with Kalahari's coverage counsel before notifying and discharging Kalahari's trial counsel:

> [S]omeone from the insurance tower raised the issue, and at that point we had relatively new coverage counsel on this case. I discussed it with him and made the decision that something we hadn't thought about before was a serious enough conflict for me to ask the counsel to step aside -- by counsel I mean the Chamberlain firm.[2]

Gundrum testified that he did not remember which insurer's representative raised the potential conflict and that the representative may have been a licensed attorney. Gundrum also testified that there were no communications relating to the conflict between him or any Kalahari employee and Whitmore. When asked for more details about the exact nature of the conflict, Gundrum declined to answer in accordance with his lawyer's instruction that such information was confidential under

---

[2] An insurance tower is a collection of excess insurers who together provide coverage that goes beyond the limits of a general liability policy. *See, e.g.*, *Texas Disposal Sys., Inc. v. FCCI Ins. Co.*, 854 F. App'x 576, 576 (5th Cir. 2021) (per curiam) (explaining company's insurance tower "was composed of four stacked liability insurance policies: primary insurance from [one insurer] followed by three excess insurance policies, with [a different insurer] providing the final tier. Together, these policies provided TDS with $17 million of coverage").

attorney–client and work-product privileges, including the extension of those privileges to discussions among a defendant and its insurance carrier or carriers.

The Real Parties subsequently filed a motion to enforce and compel, seeking to have the trial court order a second deposition of Gundrum to enforce the January 2024 Order, to overrule Kalahari's objections to the subpoena duces tecum, and to enforce the November 2022 Order for production of insurance policies and related documents. The Real Parties also asked the trial court to order sanctions against Kalahari under Texas Rule of Civil Procedure 215, arguing that the rule authorizes the court to order appropriate sanctions, including expenses and court costs, when it finds that a party has failed to comply with a court order. The Real Parties argued that the trial court's January 2024 Order required Gundrum to disclose the basis for the conflict of interest. The Real Parties contended that because Gundrum testified that he was made aware of the potential conflict through discussions with an insurer in the tower, "[b]ased on prior reservations of rights letters produced in discovery, it is certain that additional correspondence exists of this type, and likely that it will shed light on the issue of conflict." Thus, they argued, because in their view the documents must exist, Kalahari's failure to supplement document production required by the November 2022 Order should not be permitted. They also contended that there is no general privilege between insurance companies and their insureds, and that Kalahari could not shield factual information conveyed between Gundrum and the insurers. The Real Parties asked the trial court to enforce the January 2024 and November 2022 Orders by holding Kalahari in contempt and to sanction Kalahari by requiring a second deposition of Gundrum, payment of the cost of obtaining expedited transcripts, production of insurance documentation responsive to the subpoena duces tecum and the November 2022 Order, and payment of attorneys' fees and costs incurred in connection with the motion to enforce and compel.

6

During the hearing on the motion, the Real Parties reiterated their arguments that Gundrum failed to comply with the January 2024 Order by refusing to disclose the basis for the conflict of interest, again asserting that there is no general privilege between insurance companies and their insured and that Kalahari has not turned over all the documents it was required to produce under the subpoena duces tecum and the November 2022 Order. In both its filed response and at the hearing, Kalahari argued that Gundrum fully complied with both orders and the subpoena. Kalahari contended that the January 2024 Order only allowed the Real Parties limited discovery on the narrow issue of whether "any new facts [were] recently unearthed that necessitated the withdrawal." Kalahari argued that Gundrum complied with the January 2024 Order by testifying that his determination that the potential conflict required Kalahari to discharge prior counsel was not based on the discovery of any new facts but on legal theories and strategies. Further, Kalahari asserted that Gundrum's testimony that no communications existed between Kalahari representatives and Whitmore relating to the conflict satisfied the subpoena duces tecum request. In addition, Kalahari again confirmed that it had previously produced all the insurance documents required by the November 2022 Order and pointed out that Gundrum had testified that he is not aware of any new reservation-of-rights letters being sent about the conflict or any change in coverage and that the conflict was not based on the contents of insurance policies.

The trial court granted the Real Parties' motion to enforce and to compel on March 25, 2024, ordering a second deposition of Gundrum. The trial court also granted the Real Parties' request for discovery sanctions, including payment of costs for expedited deposition transcripts and an award of attorneys' fees and costs incurred in bringing the motion.

This petition for writ of mandamus followed. Kalahari also filed an emergency motion for temporary stay of the second deposition, which this Court granted.

7

**STANDARD OF REVIEW**

Trial courts generally have discretion to determine the scope of discovery. *In re National Lloyds Ins. Co.*, 532 S.W.3d 794, 802 (Tex. 2017) (orig. proceeding). However, a trial court abuses its discretion if it compels production beyond the rules of procedure, and mandamus is the proper remedy. *Id.*; *see also In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam). Under the Texas Rules of Civil Procedure, the scope of discovery extends to "any matter that is not privileged and is relevant to the subject matter of the pending action." *See In re National Lloyds*, 532 S.W.3d at 802 (quoting Tex. R. Civ. P. 192.3). Mandamus relief is appropriate when a trial court compels production of information that is either irrelevant or relevant but privileged. *Id.* (citing *In re National Lloyds Ins. Co.*, 507 S.W.3d 219, 224-25 (Tex. 2016) (orig. proceeding) (granting mandamus relief when trial court ordered discovery of irrelevant information); *In re Living Ctrs. of Tex., Inc.*, 175 S.W.3d 253, 256 (Tex. 2005) (orig. proceeding) (granting mandamus relief when trial court ordered discovery of privileged information)). Because Kalahari would lack an adequate remedy by appeal if it were forced to disclose privileged or irrelevant information by the trial court's March 2024 Order, we address below whether the trial court abused its discretion by granting the Real Parties' motion to enforce and compel. *See In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding) ("If an appellate court cannot remedy a trial court's discovery error, then an adequate appellate remedy does not exist.").

**ANALYSIS**

Kalahari contends that the trial court abused its discretion by granting the Real Parties' motion to compel and enforce for several reasons. Kalahari asserts that it has already fully complied with the trial court's January 2024 and November 2022 orders and the subpoena duces

8

tecum. It also argues that by overruling Kalahari's objections and requiring a second deposition and further document production, the trial court's March 2024 Order requires Kalahari to produce information that is protected by the attorney–client and work-product privileges, as well as requiring it to produce irrelevant and overly broad information. Kalahari also contends that the trial court abused its discretion by awarding discovery sanctions without performing the appropriate balancing test or making the proper findings. As an initial matter, we first consider the scope of the trial court's January 2024 Order.

I. **The trial court's January 2024 Order only required Kalahari to disclose newly discovered facts, if any, that prompted it to determine that the potential conflict existed.**

A central issue in this mandamus proceeding is whether the trial court's January 2024 Order requires Kalahari to disclose the basis for its decision to discharge its trial counsel, even if that decision was based on legal analysis and strategy related to previously disclosed facts, or if it requires Kalahari to disclose only any new discoverable facts that precipitated its conclusion that a potential conflict of interest existed between it and Whitmore. Based on our review of the record, we conclude that the trial court, at the Real Parties' request, only allowed a deposition for the Real Parties to determine "if there is new discovery that would be relevant to [the Real Parties'] claims and cause of actions" because discovery had already closed. At the January hearing on the motions to withdraw and for continuance, the Real Parties did not argue that they ought to be allowed to invade Kalahari's privileged communications with its counsel and insurance representatives or its work product to discover the basis for the conflict, and the trial court did not indicate that it was requiring Kalahari to disclose such information. It is well established that a party and its attorneys and representatives may not shield discoverable factual information "by mere inclusion within protected documents" or through confidential communications, *e.g.*, *In re*

9

*National Lloyds*, 532 S.W.3d at 807-08, and the trial court's January 2024 Order allowed depositions of Whitmore and Gundrum to allow the Real Parties to determine whether newly discovered—and discoverable—factual information had prompted Kalahari to discharge its trial counsel.

With this overarching conclusion in mind, we address in more detail Kalahari's arguments that the trial court abused its discretion by overruling Kalahari's objections and requiring a second deposition and further document production, thus requiring Kalahari to disclose information beyond that required for full compliance with the trial court's prior orders. Kalahari further contends that by requiring it to disclose the legal theories that prompted it to discharge its prior counsel, the trial court is requiring it to disclose information that is privileged or irrelevant. Finally, it contends the trial court abused its discretion by imposing discovery sanctions.

## II.     Kalahari fully complied with the trial court's prior orders.

Kalahari contends that the trial court abused its discretion by granting the Real Parties' motion to enforce and compel because it had already fully complied with the trial court's January 2024 and November 2022 Orders and responded to the subpoena duces tecum. We consider in turn the two orders and the subpoena, as well as Kalahari's response to each.

The January 2024 Order authorized Real Parties to depose Kalahari's representative "on the sole issue of new discovery regarding the conflict of interest that precipitated Defendants' prior counsel's motion to withdraw." The November 2022 Order required Kalahari to produce all insurance policies or agreements in effect at the time of the accident and reservation-of-rights letters "or other documents or communications regarding insurance coverage." The subpoena duces tecum required Gundrum to produce all

10

communications between him or Kalahari and Whitmore relating "to the conflict of interest that precipitated Defendants' prior Counsel to file a Motion to Withdraw."

During his deposition, Gundrum testified that his decision to discharge Kalahari's trial counsel because of the potential conflict of interest was not based on the discovery of any new facts relevant to the Real Parties' claims and causes of action. In response to repeated questions, he confirmed that he decided to discharge Kalahari's trial counsel because he concluded that a potential conflict of interest existed between Kalahari and Whitmore after analyzing different legal theories and defenses and conferring with coverage counsel. He further testified that he was not aware of any change to the insurance coverage for the case or of receiving any new reservation-of-rights letters as a result of his discussions with the insurers about the potential conflict. This testimony provided sufficient information about the conflict of interest for compliance with the January 2024 Order.

Relevant to the November 2022 Order, Gundrum testified that he was not aware of any reservation-of-rights letters or insurance documents other than the ones already provided to the Real Parties:

Q     As a -- as a result of those conversations regarding conflict, particularly in -- in your position as general counsel for the Kalahari companies, are you aware of any Reservation of Rights letters being composed and sent out?

A     No.

Q     Are you aware of any communications that would speak to a change in the insurance coverage for this case?

A     Change from when to when?

Q     Well, when I say a change in insurance coverage I mean that the applicable policies or portions of the applicable policies produced in this case would no longer be applicable or a change in the available limits as it relates to this case.
A     No.

Q      Okay.

A      I am not aware.

Q      And as general counsel and someone who handles claims, that would be something -- that would be ·documentation that you would be made aware of, correct?

A      Yes.

Although the Real Parties urge that there must be new reservations-of-rights letters that will shed light on the conflict of interest, there is nothing in the record to support this speculation. A party is not required to produce documents that do not exist. *See, e.g.*, *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 942 (Tex. 1998) (orig. proceeding) ("A document that does not exist is not within a party's possession, custody, or control."). We conclude that Kalahari established that it had complied with the November 2022 Order.

As for the Real Parties' subpoena duces tecum, which requested all communications between Gundrum or Kalahari and Whitmore regarding the conflict of interest, Gundrum testified that he searched for such documents and found none. Again, Kalahari cannot be compelled to produce documents that do not exist.

Thus, we conclude that the trial court abused its discretion by determining that Kalahari had not fully complied with the January 2024 Order, the November 2022 Order, and the subpoena duces tecum.

III.    **The trial court abused its discretion by overruling Kalahari's deposition objections and requiring it to disclose information that is protected by the attorney–client privilege and work-product exemption and that is also irrelevant.**

Kalahari contends that the trial court abused its discretion by ordering a second deposition over its objections that requiring it to disclose information about the basis of the

12

potential conflict requires it to disclose information that is protected by the attorney–client privilege and work-product exemption and is irrelevant and overbroad. We have already concluded that the January 2024 Order does not require the disclosure of the basis of the potential conflict. We now consider whether the March 2024 Order, by expanding the breadth of what the January 2024 Order required Kalahari to reveal about the basis of its decision to discharge its trial counsel and the basis for the potential conflict of interest, constitutes an abuse of discretion.

### A. Kalahari's communications with its insurers at issue here are protected by the attorney–client privilege and work-product exemption.

Kalahari contends that the trial court erred by overruling its objections that the information sought by the Real Parties about the legal theories and strategies that are the basis for the potential conflict is protected by the work-product exemption and the attorney–client privilege. The Real Parties respond that Kalahari's communications with the insurers are not privileged because there is no general privilege between insurance companies and their insureds. *See In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 53 (Tex. 2012) (orig. proceeding) (concluding that privilege did not apply to protect insurer's communications with employer because insurer in workers' compensation case was attorney's client and employer was neither attorney's client nor representative). While the Texas Supreme Court has not recognized a general privilege protecting communications between insurers and their insureds, the court has acknowledged that "under certain circumstances, communications between an insurer and its insured may be shielded from discovery by the attorney–client privilege." *Id.*; *see also In re Texas Health Res.*, 472 S.W.3d 895, 901 (Tex. App.—Dallas 2015, orig. proceeding) ("The absence of a general insurer–insured privilege does not preclude the applicability of other recognized privileges that arise in the course of the insurer–insured relationship, however."). Moreover, the work-product exemption

13

specifically covers certain mental impressions developed by and communications made for trial between a party and its representatives, including insurers. *See* Tex. R. Civ. P. 192.5(a).

### 1. Kalahari's communications with the insurers about the potential conflict are privileged attorney–client communications.

The attorney–client privilege "protects not only confidential communications between the lawyer and client, but also the discourse among their representatives." *In re XL Specialty,* 373 S.W.3d at 49-50. Under Texas Rule of Evidence 503(a)(2), if a client authorizes a person "to obtain legal services or act on legal advice on behalf of the client or to make or receive confidential communications with respect to legal services, that person is a client's representative even if the person is not an employee of the client." *In re Texas Health Res.*, 472 S.W.3d at 902. Thus, an insurer may qualify as the client's representative because "[i]nsurance companies typically have the duty to conduct the defense of the insured under a liability policy, including the authority to select, employ, and pay the attorney." *Id.* (citing *National Tank Co. v. Brotherton,* 851 S.W.2d 193, 199 (Tex. 1993) (orig. proceeding) ("[L]iability policies typically vest the insurer with authority to hire counsel and conduct the defense of the insured."); *Employers Cas. Co. v. Tilley,* 496 S.W.2d 552, 558 (Tex. 1973)). "[M]any policies give[] the insurer complete, exclusive control of the defense," *Unauthorized Practice of Law Comm. v. American. Home Assurance Co.,* 261 S.W.3d 24, 27 (Tex. 2008), which includes the ability to obtain professional legal services on behalf of the insured. For that reason, under the proper circumstances, communications between an insurer and its insured may be shielded from discovery by the attorney–client privilege. *See In re Texas Health Res.*, 472 S.W.3d at 902 (citing *In re XL Specialty Ins. Co.*, 373 S.W.3d at 53).

14

The attorney–client privilege protects confidential communications between a lawyer and a client, or their respective representatives, made to facilitate the rendition of professional legal services to the client. Tex. R. Evid. 503(b)(1). Communications are confidential if they are not intended to be disclosed to third parties other than those "to whom disclosure is made to further the rendition of professional legal services to the client." *Id.* R. 503(a)(5)(A). The rule defines a client's representative as follows:

(A) a person who has authority to obtain professional legal services for the client or to act for the client on the legal advice rendered; or

(B) any other person who, to facilitate the rendition of professional legal services to the client, makes or receives a confidential communication while acting in the scope of employment for the client.

*Id.* R. 503(a)(2). Under this Rule, all communications between Kalahari (including its general counsel Gundrum), its coverage counsel, and its trial counsel about the potential conflict of interest between Kalahari and Whitmore are protected by the attorney–client privilege.

We conclude, under the circumstances present here, that the communication between Gundrum and a representative of Kalahari's insurance tower about the potential conflict is also protected by the attorney–client privilege. In Gundrum's deposition, after he testified that his decision that there was a potential conflict was not based on the discovery of new facts but instead "on analysis and thinking about different legal theories," he testified as follows about his decision to discharge Kalahari's prior trial counsel:

[S]omeone from the insurance tower raised the issue, and at that point we had relatively new coverage counsel on this case. I discussed it with him and made the decision that something we hadn't thought about before was a serious enough conflict for me to ask the counsel to step aside – by counsel I mean the Chamberlain firm.

15

The Real Parties then inquired, "So what was presented by coverage counsel that caused you the need to then make the decision that a withdrawal was required due to a conflict?" Kalahari's counsel objected that the question called for the disclosure of work product and attorney–client privileged information and instructed Gundrum not to answer. The Real Parties asked for more details about Gundrum's initial conversation with an insurer's representative that triggered him to consider the potential conflict, but Gundrum did not recall the details of who raised the issue and whether it was raised in a conversation or by email. Here, given that this case involves liability claims, rather than a workers' compensation claim like *In re XL Specialty Ins. Co.*, 373 S.W.3d at 53, we conclude that the mandamus record reflects that the insurers are representatives of Kalahari who were involved in the decision-making process about their insured's defense of the claims against it. *See In re Texas Health Res.*, 472 S.W.3d at 904 (concluding that communication in claim note involving representatives of insured who were involved in decision-making process about defense of claim and insurance adjuster working on claim was confidential communication protected by attorney–client privilege). Therefore, we conclude the substance of the discussion between an insurer's representative and its insured Kalahari about how available defenses might present a potential conflict of interest is a confidential communication protected by the attorney–client privilege. *See id.* Consequently, the trial court abused its discretion to the extent it overruled Kalahari's objections to the deposition questions and subpoena duces tecum that were based on the attorney–client privilege.

### 2. Kalahari's communications with the insurers about the potential conflict are also protected by the work-product exemption.

Kalahari contends that the trial court also abused its discretion by overruling Kalahari's deposition and subpoena duces tecum objections based on the work-product exemption.

16

The Real Parties broadly assert that the work-product exemption does not apply to the information they seek, but they offer no argument or authorities in support of that assertion.

Texas Rule of Civil Procedure 192.5 establishes that work product comprises:

(1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents; or

(2) a communication made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents.

Tex. R. Civ. P. 192.5(a). In addition, any work product that contains an attorney's mental impressions, opinions, conclusions, or legal theories constitutes core work product and is not discoverable. *Id.* R. 192.5(b)(1). Any other work product is discoverable only if the party seeking discovery shows that it has substantial need of the materials in preparation for trial and is unable to obtain the substantial equivalent of the material without undue hardship. *Id.* R. 192.5(b)(2).

Here, the information sought by the Real Parties qualifies as core work product because it includes mental impressions developed or communications made for trial by Kalahari's general counsel Gundrum and other Kalahari representatives, including its attorneys and insurers. *See id.* R. 192.5(a), (b)(1). Gundrum testified that he became aware of the potential conflict, and after "analysis and thinking about different legal theories" and discussion with Kalahari's coverage counsel, he ultimately decided that the potential conflict required their prior trial counsel to withdraw. These communications, whether written or oral, were developed or made for trial, *id.* R. 192.5(a), and contain "the attorney's or the attorney's representative's mental impressions, opinions, conclusions, or legal theories," *id.* R. 192.5(b)(1). They are therefore core work product

17

that is not discoverable. Accordingly, the trial court abused its discretion to the extent it overruled Kalahari's objections on work-product grounds to the deposition questions and subpoena duces tecum.

**B. The trial court erred by requiring Kalahari to disclose information about the potential conflict in response to the Real Parties' overbroad request that seeks irrelevant information.**

Kalahari also contends that the trial court abused its discretion by ordering it to disclose information that is not relevant in response to the Real Parties' overbroad request because the Texas Disciplinary Rules of Professional Conduct provide a client with the power to discharge a lawyer at any time with or without cause. *See* Tex. Disciplinary R. Prof'l Conduct 1.15(a)(3) cmt. 4, *reprinted in* Tex Gov't Code Ann., tit. 2, subtit. G, app. A. (Tex. State Bar R. art. X, § 9); *see also* Tex. R. Civ. P. 192.3(a) (establishing that party may not obtain discovery of matters that are irrelevant to subject matter of suit). Moreover, the disciplinary rules require counsel to promptly withdraw from representation of multiple clients when it appears that the clients' interests may be materially and directly adverse or the representation of each reasonably appears to become adversely limited by the other's interests. *See* Tex. Disciplinary R. Prof'l Conduct 1.06(b).

We agree that Kalahari does not owe the Real Parties a detailed explanation of what the potential conflict of interest is—aside from the fact that it was not based on new discoverable facts or a change to the applicable insurance policies or their coverage—or why their prior counsel withdrew from the case. "Although the scope of discovery is broad, requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution." *In re CSX Corp.*, 124 S.W.3d at 152. It is the discovery proponent's burden to demonstrate that the requested information falls within Rule 192.3's scope. *See id.* The Real Parties have failed to demonstrate

18

that the information they seek is unprivileged information that is relevant to the subject of the action, even if it would be inadmissible at trial, because it is "reasonably calculated to lead to the discovery of admissible evidence." *See id.* (quoting Tex. R. Civ. P. 192.3(a)). We conclude that the trial court abused its discretion by requiring Kalahari to disclose information that exceeds the scope of Rule 192.3(a).

## IV. The trial court erred by awarding discovery sanctions.

Because the trial court abused its discretion by granting the Real Parties' motion to compel and enforce, it also erred by awarding discovery sanctions based on the motion.

## CONCLUSION

We hold that the trial court abused its discretion by ordering a second deposition of Kalahari's corporate representative Gundrum, by compelling Kalahari to disclose the legal theories and trial strategies that prompted it to determine that a potential conflict of interest existed between it and Whitmore and to discharge its prior trial counsel, and by awarding discovery sanctions. Accordingly, we conditionally grant Kalahari's petition for writ of mandamus and direct the trial court to vacate its March 25, 2024 Order Granting Plaintiffs' Motion to Enforce and Motion to Compel. We are confident that the trial court will comply, and our writ will issue only if it does not.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Filed: June 26, 2024

19