**In re James N. FONTENOT, Jr., M.D. James N. Fontenot, Jr., M.D., P.A.**

No. 2–99–378–CV.

Court of Appeals of Texas, Fort Worth.

Jan. 26, 2000.

Wallach & Moore, P.C., Jennifer M. Andrews, D. Michael Wallach, Anthony M. Kuehler, Fort Worth, for Relators.

J. Patrick Hazel, Austin, Anderson Law Firm, Hank Anderson, Wichita Falls, Branch Law Firm, Turner W. Branch, Houston, for Real–Parties–In–Interest.

Panel B: DAY, LIVINGSTON, and RICHARDS, JJ.

### OPINION

TERRIE LIVINGSTON, Justice.

### INTRODUCTION

The issue presented in this mandamus proceeding is whether the trial court clear-

ly abused its discretion by compelling relators, a physician and his professional association (collectively, "relators"), to produce two documents: a written narrative provided to his attorney in another lawsuit and a confidential claim questionnaire with the same written narrative attached. The physician submitted both documents to his liability insurance carrier after he received pre-suit notices of claim in the underlying medical malpractice case. Real-parties-in-interest argue the new witness statement rule includes these communications between the physician and his attorneys and malpractice insurers. We disagree because such an interpretation would vitiate the attorney-client privilege.

## BACKGROUND

On April 14, 1997, relator Dr. James N. Fontenot received the first of three notices of claim concerning his care and treatment of Thomas Jones, deceased. He received the other two notices of claim, from different attorneys, on July 30, 1998 and December 11, 1998. His professional association was included in the July 30th notice of claim.

On April 30, 1997, Dr. Fontenot wrote a letter to Texas Medical Liability Trust ("TMLT") and copied attorney Anthony Kuehler, who was retained by TMLT, his liability insurance carrier, to represent him in a different lawsuit. The letter was written for the purpose of facilitating professional legal services to Dr. Fontenot in that lawsuit.

On September 4, 1998, after receipt of two of the three notices of claim, Dr. Fontenot sent TMLT a TMLT Claims Questionnaire/Narrative concerning his treatment of Thomas Jones. He provided the claim form because of his contractual obligations with TMLT that required him to send TMLT certain information upon receipt of a notice of claim. The claim form incorporated Dr. Fontenot's April 30, 1997 letter to TMLT and Kuehler.

Real-parties-in-interest, Pat K. Jones, individually and as executrix of the estate of her deceased husband, Thomas W. Jones, and their son, Andrew C. Jones, (collectively, "Jones"), filed suit against Dr. Fontenot and his professional association on February 26, 1999. Jones issued a Request for Disclosure on May 10, 1999 that included a request for witness statements. *See* TEX.R. CIV. P. 192.3(h), 194.2(i). In response, relators filed a Motion for Protective Order, withholding both the letter and the claim form. After a hearing, at which time relators submitted both documents for the trial court's in camera review, the trial court denied the motion for protective order and ordered relators to produce the documents if mandamus review was not sought within thirty days. Relators timely filed this mandamus action.

## DISCUSSION

### *Standard of Review*

■ In deciding whether a writ of mandamus is appropriate, we recognize that mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy at law. *See Republican Party v. Dietz,* 940 S.W.2d 86, 88 (Tex.1997) (orig.proceeding). A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *See Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding). A trial court has no discretion in determining what the law is or in applying the law to the facts. *See id.* at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in mandamus. *See id.*[1]

■ Mandamus will issue to correct a discovery order if the order constitutes a

1. We do, however, recognize that the trial courts currently have little guidance because of the dearth of case law on the new discovery rules.

clear abuse of discretion and there is no adequate remedy by appeal. *See In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex.1998) (orig.proceeding). In making the determination of whether the trial court abused its discretion, we are mindful that the purpose of discovery is to seek the truth so that disputes may be decided by what the facts reveal, not by what facts are concealed. *See id.* This broad grant is limited by the legitimate interests of an opposing party to avoid overly broad requests, harassment, or disclosure of privileged information. *See Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 814–15 (Tex. 1995) (orig.proceeding). According to Texas Rule of Civil Procedure 1, the proper objective of the rules is to obtain a just, fair, equitable, and impartial adjudication of the litigants' rights as expeditiously and inexpensively as practicable. *See* TEX.R. CIV. P. 1.

### Witness Statements and the Attorney–Client Privilege

This case is governed by the new discovery rules that went into effect on January 1, 1999, because the underlying suit was filed after January 1, 1999.[2] Relators contend that pursuant to paragraph 5 of the supreme court's order implementing the new rules we should not apply the new discovery rules to either statement because the statements were made prior to the effective date of the new discovery rules.[3] Because we have determined that the statements are privileged and therefore not subject to discovery, there is no undue prejudice that would require us to forego application of the new rules. *See In re Team Transport, Inc.*, 996 S.W.2d 256, 260 (Tex.App.—Houston [14th Dist.] 1999, orig. proceeding) (Procedural rules apply to suits filed before the effective date provided no vested right is impaired.).

The new discovery rules provide that "[a] party may obtain discovery of the statement of any person with knowledge of relevant facts—a 'witness statement'—regardless of when the statement was made." TEX.R. CIV. P. 192.3(h). Comment nine to the rule, however, instructs that this broad rule applies only to non-privileged statements: "[e]limination of the 'witness statement' exemption does not render all witness statements automatically discoverable but subjects them to the same rules concerning the scope of discovery and *privileges* applicable to other documents or tangible things." TEX.R. CIV. P. 192.3(h), cmt. 9 (emphasis added).

■ Relators contend that the letter and claim form are privileged because they are confidential communications between a client, a client's attorney, and a client's representatives for the purpose of facilitating the rendition of professional legal services to the client. *See* TEX.R. EVID. 503(b)(1)(B) & (D). We agree.

■ A "representative of the client," for purposes of the attorney-client privilege, is "a person having authority to obtain professional legal services, or to act on advice thereby rendered, on behalf of the client." TEX.R. EVID. 503(a)(2)(A). Dr. Fontenot's contract of insurance with TMLT expressly confers upon TMLT the right and contractual duty to obtain and facilitate legal representation for Dr. Fontenot in the event that he is faced with a professional medical liability action.

Jones argues that this case is controlled by three cases: *In re Jimenez*, 4 S.W.3d 894 (Tex.App.—Houston [1st Dist.] 1999, orig. proceeding); *In re Team Transport,*

---

2. *See* Supreme Court Order of August 4, 1998, Misc. Docket No. 98–9136, 61 TEX. B.J. 752 (Sept.1998), *modified by* Supreme Court Order of November 8, 1998, Misc. Docket No. 98–9196, 61 TEX. B.J. 1140 (Dec.1998), *corrected by* Supreme Court Order of December 31, 1998, Misc. Docket No. 98–9224, 62 TEX. B.J. 115 (Feb.1999).

3. "The application of these revised rules ... must be without prejudice to any person on account of the transition from the prior rules." Supreme Court Order of November 8, 1998, Misc. Docket No. 98–9196, 61 TEX. B.J. 1140 (Dec.1998).

*Inc.,* 996 S.W.2d at 256; *In re W & G Trucking, Inc.,* 990 S.W.2d 473 (Tex. App.—Beaumont 1999, orig. proceeding). In both *Jimenez* and *Team Transport,* however, relators asserted the rule 192.5(b)(2) work-product privilege as the basis for non-disclosure. *See Jimenez,* 4 S.W.3d at 895; *Team Transport,* 996 S.W.2d at 258; *see also* TEX.R. CIV. P. 192.5(b)(2). Only in *W & G Trucking,* as here, did relator assert the rule 503 attorney-client privilege as the basis for non-disclosure. *See W & G Trucking,* 990 S.W.2d at 475; *see also* TEX.R. EVID. 503. In upholding the trial court's decision to require disclosure of the witness statement to an insurance investigator, the *W & G Trucking* court determined that there was no evidence that showed the person giving the statement was a client. *See W & G Trucking,* 990 S.W.2d at 475. Here, it is undisputed that Dr. Fontenot was communicating directly with his attorney when he copied the April 30th letter to Kuehler. *See* TEX.R. EVID. 503(a)(1). And the evidence shows that both the letter and claim form were provided to TMLT as a representative of the client. *See* TEX.R. EVID. 503(a)(2).

To adopt Jones' broad interpretation of the witness-statement rule would make all witness statements discoverable and would effectively abrogate the attorney-client privilege. The attorney-client privilege is one of the oldest privileges recognized by the common law, *see Ford Motor Co. v. Leggat,* 904 S.W.2d 643, 647 (Tex.1995), and we believe that if the Texas Supreme Court had intended to eliminate the attorney-client privilege as it applies to witness statements it would have expressly done so. Furthermore, elimination of the attorney-client privilege under the circumstances of this case would turn the legislature's scheme for the pre-suit investigation of medical malpractice claims on its head. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 4.01 (Vernon Supp.2000). The purpose of that statute is to provide potential defendants and their representatives a 60–day pre-suit period in which to gather information and determine whether claims have merit and should be resolved without litigation. *See De Checa v. Diagnostic Center Hosp., Inc.,* 852 S.W.2d 935, 938 (Tex.1993); *Schepps v. Presbyterian Hosp.,* 652 S.W.2d 934, 938 (Tex.1983). To make a physician's confidential communications with his malpractice insurer and attorneys during that time period discoverable would not only have a chilling effect on the free flow of information between a client and his attorney or legal representative, but also defeat the purpose of the statutory scheme by increasing litigation and insurance costs. The plaintiff/claimant in these types of cases can still obtain discovery of the facts known to the physician without invading the protection afforded by the attorney-client privilege.

## CONCLUSION

We hold that Dr. Fontenot's communications with attorney Kuehler and with TMLT were privileged attorney-client communications and were thus exempt from discovery as witness statements. Consequently, we respectfully hold that the trial court abused its discretion by ordering relators to produce those communications to Jones. We conditionally grant relators' petition for writ of mandamus and direct the trial court to vacate its November 9, 1999 order. We are confident that the trial court will promptly comply with our opinion. The writ will issue only if it does not.