ACCEPTED
01-15-00918-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/27/2015 4:57:39 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-_____-CV

**IN THE COURT OF APPEALS**

**FOR THE FIRST DISTRICT OF TEXAS**

**AT HOUSTON**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/27/2015 4:57:39 PM
CHRISTOPHER A. PRINE
Clerk

*In re:*

*UNION PACIFIC RAILROAD COMPANY,*

*Relator.*

**PETITION FOR WRIT OF MANDAMUS**

**HAYNES AND BOONE, LLP**

**Kent Rutter**
**State Bar No. 00797364**
**Christina Crozier**
**State Bar No. 24050466**
**Andrew Guthrie**
**State Bar No. 24078606**
**1221 McKinney, Suite 2100**
**Houston, Texas 77010-2007**
**Telephone: (713) 547-2000**
**Telecopier: (713) 547-2600**
*Kent.Rutter@haynesboone.com*
*Christina.Crozier@haynesboone.com*
*Andrew.Guthrie@haynesboone.com*

**KANE RUSSELL COLEMAN & LOGAN PC**

**Marcy Lynn Rothman**
**State Bar No. 17318500**
**M. Daniel Guerra**
**State Bar No. 00793865**
**5051 Westheimer Road, 10th Floor**
**Houston, Texas 77056**
**Telephone: (713) 425-7444**
**Telecopier: (713) 425-7700**
*MRothman@krcl.com*
*DGuerra@krcl.com*

*Attorneys for Relator,*
*Union Pacific Railroad Company*

## IDENTITY OF PARTIES AND COUNSEL

**I.**    <u>**Relator:**</u>

Union Pacific Railroad Company

**II.**    <u>**Counsel for Relator:**</u>

Kent Rutter
Christina Crozier
Andrew Guthrie
HAYNES AND BOONE, LLP
1221 McKinney, Suite 2100
Houston, Texas 77010-2007

Marcy Lynn Rothman
M. Daniel Guerra
KANE RUSSELL COLEMAN & LOGAN PC
5051 Westheimer Road, 10th Floor
Houston, Texas 77056

**III.**    <u>**Real Parties in Interest:**</u>

- Donald and Mary Trichel, Individually and as Next Friends of Nicholas Trichel
- Jeremy Ray Hampton

**IV.**    <u>**Counsel for Real Parties in Interest Donald and Mary Trichel, Individually and as Next Friends of Nicholas Trichel:**</u>

Vuk S. Vujasinovic
Brian Beckcom
VB ATTORNEYS, PLLC
6363 Woodway, Suite 400
Houston, Texas 77057

Dale Jefferson
Levon Hovnatanian
MARTIN, DISIERE, JEFFERSON & WISDOM
Niels Esperson Building
808 Travis, 20th Floor
Houston, Texas 77002

**V.** **Counsel for Real Party in Interest Jeremy Ray Hampton:**

Adolfo R. Rodriguez, Jr.
Wilson C. Aurbach
Christopher K. Rusek
RODRIGUEZ LAW FIRM, P.C.
1700 Pacific Ave., Suite 3850
Dallas, Texas 75201

**VI.** **Respondent:**

Honorable Kyle Carter
125th District Court
201 Caroline, 10th Floor
Houston, Texas 77002

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................i

TABLE OF CONTENTS..................................................................... iii

TABLE OF AUTHORITIES ................................................................v

STATEMENT OF JURISDICTION.................................................... vii

STATEMENT OF THE CASE........................................................ viii

ISSUES PRESENTED....................................................................x

STATEMENT OF FACTS ................................................................1

I.  The underlying case arises from a vehicular accident....................................1

II.  Union Pacific immediately engaged outside counsel to conduct interviews and provide legal advice about possible litigation..........................1

III.  The trial court ruled that the recorded interviews between Union Pacific's employees and its litigation counsel were not privileged and ordered them immediately disclosed ......................................................3

SUMMARY OF THE ARGUMENT .......................................................4

ARGUMENT AND AUTHORITIES......................................................6

I.  The trial court abused its discretion by ordering disclosure of the recorded interviews, which are protected by the attorney-client privilege ......................................................................6

    A.  The interviews were privileged communications among Union Pacific employees and its outside litigation counsel.................7

    B.  Union Pacific did not waive the privilege...........................13

II.  Union Pacific has no adequate remedy by appeal

    16

CONCLUSION AND PRAYER ...........................................................17

VERIFICATION............................................................................................19

CERTIFICATE OF COMPLIANCE............................................................20

CERTIFICATE OF SERVICE ......................................................................21

APPENDIX ........................................................................ Tab A-C

# TABLE OF AUTHORITIES

**CASES**

*In re AEP Tex. Central Co.*,
128 S.W.3d 687 (Tex. App.—San Antonio 2003, orig. proceeding) .................12

*In re Arpin Am. Moving Systems, LLC*,
416 S.W.3d 927 (Tex. App.—Dallas 2013, orig. proceeding) ...........................6

*In re CSX Corp.*,
124 S.W.3d 149 (Tex. 2003) ...........................................................................6

*In re E.I. DuPont de Nemours & Co.*,
136 S.W.3d 218 (Tex. 2004) ...........................................................................8

*In re Fontenot*,
13 S.W.3d 111 (Tex. App.—Fort Worth 2000, orig. proceeding) ...............10, 13

*In re Ford Motor Co.*,
211 S.W.3d 295 (Tex. 2006) (orig. proceeding) ..............................................16

*Huie v. DeShazo*,
922 S.W.2d 920 (Tex. 1996) ...........................................................................6

*In re Matthew Arden*,
2004 WL 576064 (Tex. App.—El Paso 2004, orig. proceeding)...........12, 13, 16

*In re Park Cities Bank*,
409 S.W.3d 859 (Tex. App.—Tyler 2013, orig. proceeding) ................10, 11, 13

*In re Prudential Ins. Co.*,
148 S.W.3d 124 (Tex. 2004) ...........................................................................5

*In re Texas Health Res.*,
No. 05-15-00813-CV, 2015 WL 5029272 (Tex. App.—Dallas
Aug. 26, 2015, orig. proceeding) .....................................................................8

*In re University of Tex. Health Ctr.*,
33 S.W.3d 822 (Tex. 2001) .............................................................................16

*In re USA Waste Mgmt. Res., LLC*,
387 S.W.3d 92 (Tex. App.—Houston [14th Dist.] 2012, orig.
proceeding) ...................................................................................8, 11

*Walker v. Packer*,
827 S.W.2d 833 (Tex. 1992) ..................................................6, 16

**RULES**

TEX. R. CIV. P. 192, cmt. 9 .....................................................................9

TEX. R. CIV. P. 192.3(h) .......................................................................14

TEX. R. CIV. P. 193, cmt. 3 ..............................................................14, 15

TEX. R. CIV. P. 193.2(f) ........................................................................13

TEX. R. CIV. P. 193.3(a) ........................................................................14

TEX. R. CIV. P. 193.3(b) ........................................................................14

TEX. R. EVID. 503(a)(2)...........................................................................7

TEX. R. EVID. 503(a)(2)(A) ......................................................................7

TEX. R. EVID. 503(a)(2)(B) ......................................................................8

TEX. R. EVID. 503(b)(1)(A), (D) ..............................................................7

TEX. R. EVID. 503(d)(1) ..............................................................10, 11, 12

TEX. GOV'T CODE § 22.221(b) .............................................................. vii

- vi -

## STATEMENT OF JURISDICTION

The Court has mandamus jurisdiction under Texas Rule of Appellate Procedure 52 and Texas Government Code Section 22.221(b), which provides that a court of appeals "may issue all writs of mandamus, agreeable to the principles of law regulating those writs, against a . . . judge of a district or county court . . . ." TEX. GOV'T CODE § 22.221(b).

**STATEMENT OF THE CASE**

*Nature of Proceedings:*

This mandamus petition arises from a case involving a collision between a car driven by Nicholas Trichel and a tractor-trailer rig leased by Union Pacific and driven by Jeremy Ray Hampton. (MR:2.)[1] Nicholas's parents, Donald and Mary Trichel, filed this lawsuit on behalf of Nicholas's estate and in their individual capacities (collectively, "the Trichels"). (MR:1-29.) The Trichels bring negligence claims against Union Pacific and Jeremy Ray Hampton. (MR:3-4.) The case is No. 2014-23177, *Donald and Mary Trichel, Individually and as Next Friends of Nicholas Trichel v. Union Pacific Railroad Company and Jeremy Ray Hampton*, In the 125th District Court of Harris County, Texas. (MR:1-29.)

*Respondent:*

The Respondent is the Honorable Kyle Carter, Judge of the 125th Judicial District Court of Harris County, Texas.

*Action Complained of:*

Two days after the accident, Union Pacific's outside counsel met with Hampton and another Union Pacific driver to discuss the accident so that she could understand their impressions of what had occurred and provide legal advice to Union Pacific. (MR:120.) She was joined by another Union Pacific employee—

---

[1]   Union Pacific will cite to the Appendix as (App. [Tab #]) and the Mandamus Record as (MR:[page]).

acting as a representative of Union Pacific's in-house counsel—who conducted the interviews and recorded them. (MR:115-16, 120.) The Trichels later demanded production of these recordings. Union Pacific objected and argued that the interviews were protected from disclosure by the attorney-client privilege. (*See* MR:43-50, 124-27.) After reviewing a transcript of the recordings *in camera*, the trial court overruled those objections and ordered the immediate production of the recordings and transcripts. (*See* App. A; MR:264-65.)

# ISSUES PRESENTED

(1)    Did the trial court abuse its discretion by requiring the immediate disclosure of privileged interviews between Union Pacific employees and its outside counsel, where the interviews were conducted for the specific purpose of facilitating the rendition of legal services to Union Pacific?

(2)    Does Union Pacific lack an adequate remedy by appeal where the trial court required the immediate disclosure of communications protected by the attorney-client privilege?

# STATEMENT OF FACTS

## I. The underlying case arises from a vehicular accident.

The underlying case arises out of a collision that occurred on April 15, 2014, between a Ford Mustang driven by Nicholas Trichel and a tractor-trailer rig leased by Union Pacific and driven by Jeremy Ray Hampton. (MR:1-2.) Trichel suffered significant injuries in the accident. (MR:2.) Nicholas Trichel's parents, Donald and Mary Trichel, filed the underlying lawsuit, alleging that Hampton and Union Pacific were negligent, grossly negligent, and negligent *per se*. (MR:1, 3-4.)

## II. Union Pacific immediately engaged outside counsel to conduct interviews and provide legal advice about possible litigation.

On the day of the accident, Union Pacific engaged Marcy Rothman of the law firm Kane Russell Coleman & Logan PC to provide legal advice in connection with the accident. (MR:120.) Given the nature of the incident, Union Pacific already anticipated a possible lawsuit. (MR:108, 115-16.)[2] In fact, two of its employees—Hampton and James Wilson (who was driving along in another tractor-trailer)—had either been issued citations at the scene or read their *Miranda* rights by Corporal James Talbert. (MR:108, 120.) Rothman was therefore engaged by Union Pacific to provide legal advice for issues arising out of the accident, including possible criminal charges. (MR:120.)

---

[2] This belief was confirmed when Union Pacific received a letter—dated two days after the accident—in which the Trichels noted their intent to pursue litigation. (MR:113.)

Two days later, Rothman met with Hampton and Wilson to discuss the accident so that she could better understand their impressions of how it occurred. (MR:115-16, 120.) Rothman was joined by William J. Green, Director of Claims for Union Pacific, who was assisting in the investigation as a representative of Union Pacific's in-house counsel. (MR:115-16, 120.) Rothman directed Green to take the lead in conducting the interviews, asking Hampton and Wilson to provide their accounts of the events surrounding the accident in her presence so that she could hear their first-hand recollections. (MR:115-16, 120.) Green also tape recorded the interviews. (MR:115.)

Recently, in the course of preparing for his deposition, Green realized that the recorded interviews had never been provided to Rothman, Union Pacific's litigation counsel.[3] (MR:115-16.) He immediately notified Rothman and provided her with a copy of the statements on October 20, 2015. (MR:115-16.) Two days later, out of an abundance of caution and a show of good faith, Rothman voluntarily disclosed the existence of the recorded interviews to counsel for the Trichels, asserted that they were privileged, and produced a supplemental privilege log. (MR:122, 124-27.)

---

[3]  Initially, Rothman was engaged to represent Union Pacific and its employees (including Hampton and possibly Wilson) in connection with any possible litigation arising out of the accident. (MR:115, 120.) However, Hampton has since engaged separate counsel and Wilson was not sued; Rothman now represents only Union Pacific.

**III.** **The trial court ruled that the recorded interviews between Union Pacific's employees and its litigation counsel were not privileged and ordered them immediately disclosed.**

At a hearing on October 23, 2015, the Trichels demanded that Union Pacific produce the recorded interviews. (MR:264; Supp.MR.[4]) While they argued that the interviews were not protected by the attorney-client privilege, they also lobbed allegations that Union Pacific had intentionally concealed the recordings—despite the fact that Union Pacific *voluntarily* disclosed their existence immediately after the recordings were brought to the attention of its counsel. (Supp.MR; MR:128; *see also* MR:115-16, 124-27.) Union Pacific resisted the demand for production. It argued that the statements are unquestionably privileged as confidential communications between and among Union Pacific employees and its outside litigation counsel that occurred in anticipation of this very litigation. (MR:43.) Moreover, Union Pacific argued that it had no duty to notify the Trichels about the existence of the interviews in the first place, but did so in good faith and out of an abundance of caution. (MR:43.)

Judge Kyle Carter asked to review a transcript of the recorded interviews *in camera*. (MR:264; Supp.MR) After doing so, and hearing arguments from both sides, the trial court ruled on October 27, 2015 that the statements should be

---

[4]   The transcript from the October 23, 2015 hearing is not yet available, but Union Pacific intends to file a supplement to the mandamus record as soon as it receives the transcript. For the time being, Union Pacific will reference that transcript as "Supp.MR."

immediately produced. (*See* MR:264-65; App. A.[5]) Union Pacific requested a stay of that ruling for seven days so that it could pursue mandamus relief with this Court, but the trial court did not grant that request. (MR:49, 265; *see* App. A.) He ordered Union Pacific to produce the statements "immediately." (MR:264-65; App. A.) Union Pacific therefore seeks mandamus relief to prevent the disclosure of these privileged communications with counsel.[6]

## SUMMARY OF THE ARGUMENT

The trial court abused its discretion when it ruled that the recorded interviews between Hampton, Wilson, Green, and Rothman were not protected by the attorney-client privilege and were subject to immediate disclosure.

The attorney-client privilege applies when a client (or its representative) engages in confidential communications for the purposes of facilitating the rendition of legal services. That is precisely what the post-accident interviews were, as they involved Hampton and Wilson (as Union Pacific employees) describing the accident to a lawyer representing Union Pacific so that she could render legal advice on the very claims asserted in this litigation. These were

---

[5] Union Pacific learned of the trial court's ruling during a phone call with the clerk around lunchtime on October 27, 2015. (MR:264.) The call ended with instructions that the Trichels submit a proposed order, which is attached as Appendix Tab A. (MR:265.) Union Pacific will file a supplement to the Mandamus Record as soon as it receives the signed order.

[6] To assist the Court in its analysis of this Petition—while preserving the privilege—Union Pacific intends to provide the transcripts of these recorded interviews for the Court's *in camera* inspection, as it did in the trial court. It is therefore filing a Motion for Permission to File Documents *In Camera*.

paradigmatic attorney-client communications and they are not subject to disclosure.

Likely for that reason, the Trichels strain to argue that the interviews are not privileged under the crime-fraud exception. They are wrong. The crime-fraud exception only applies where the attorney's services were sought *for the purpose* of enabling a crime or fraud. The Trichels have no evidence to satisfy that requirement, only empty allegations. And in fact, even their allegations (though wrong as a matter of fact and insufficient as a matter of law) fail to trigger this exception.

Nor does it make a difference that Union Pacific only recently disclosed that the recorded interviews exist. Because the communications pertained to *this* litigation—and therefore go to the heart of the attorney-client privilege—Union Pacific had no obligation to notify the Trichels of their existence in the first place. Union Pacific therefore did not waive the privilege by bringing these recordings to the Trichels' attention as a courtesy and out of an abundance of caution.

Finally, because the trial court's ruling improperly requires Union Pacific to disclose privileged attorney-client communications, Union Pacific has no adequate remedy by appeal. This Court should grant the petition for writ of mandamus.

**ARGUMENT AND AUTHORITIES**

This Court should grant mandamus relief, which is available when: (1) a trial court clearly abuses its discretion; and (2) there is no adequate remedy by appeal. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135-36 (Tex. 2004). Because a trial court has no discretion to determine what the law is or apply the law to the facts, a trial court abuses its discretion when it reaches an erroneous legal conclusion. *Id.* at 135; *Huie v. DeShazo*, 922 S.W.2d 920, 927-28 (Tex. 1996). When a trial court orders discovery that exceeds what is permitted by the Texas Rules of Civil Procedure—including by ordering the production of privileged materials—it abuses its discretion, and the resisting party has no adequate remedy by appeal. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003); *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992); *In re Arpin Am. Moving Systems, LLC*, 416 S.W.3d 927, 929 (Tex. App.—Dallas 2013, orig. proceeding).

I. **The trial court abused its discretion by ordering disclosure of the recorded interviews, which are protected by the attorney-client privilege.**

Simply put, these interviews are protected by the attorney-client privilege and the trial court abused its discretion in ordering that they be disclosed. The attorney-client privilege protects confidential communications between and among client representatives (including employees who are discussing the performance of their job duties) and the client's counsel. That is exactly what the interviews were.

Moreover, Union Pacific did not waive the privilege by disclosing the recorded interviews when it did—in fact, Union Pacific had no obligation to disclose them in the first place. The trial court therefore had no basis to order disclosure of the recorded interviews and abused its discretion by doing so.

**A.    The interviews were privileged communications among Union Pacific employees and its outside litigation counsel.**

Texas Rule of Evidence 503 defines the scope of the attorney-client privilege in Texas. Under that rule, a client has the right to protect from disclosure "confidential communications made for the purposes of facilitating the rendition of professional legal services," including communications: (i) between a representative of the client and the client's lawyer; and (ii) between representatives of the client. *See* TEX. R. EVID. 503(b)(1)(A), (D). The recorded interviews with Hampton and Wilson are therefore privileged because they involved confidential communications between Union Pacific's lawyer (Rothman) and its representatives (Green, Hampton, and Wilson). This privilege belongs to Union Pacific. TEX. R. EVID. 503(c).

Rule 503 defines a "representative of the client" in two different ways, both of which apply in this case. *See* TEX. R. EVID. 503(a)(2). Subsection 2(A) defines a client representative as any "person having authority to obtain professional legal services, or to act on advice thereby rendered, on behalf of the client." TEX. R. EVID. 503(a)(2)(A). That was Green, who was investigating the accident as a

representative of Union Pacific's in-house counsel and coordinating with Rothman (outside counsel) to facilitate her rendition of legal services to Union Pacific. (MR:115-16, 120.)

Rule 503 also contains a second definition of "representative," one that goes much further than the test embodied in Subsection 2(A). *See, e.g., In re Texas Health Res.*, No. 05-15-00813-CV, 2015 WL 5029272, at *3 (Tex. App.—Dallas Aug. 26, 2015, orig. proceeding). Under Subsection 2(B), a client representative includes "any other person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the scope of employment for the client." TEX. R. EVID. 503(a)(2)(B).

This definition incorporates the "subject matter" test, which deems an employee's communications with his employer's attorney privileged if two conditions are satisfied: (1) the communication is made at the direction of the employee's superiors at the company; and (2) the subject matter upon which the attorney's advice is sought by the company—and that which is addressed in the confidential communication—is the performance of the employee's duties of his employment. *See, e.g., In re USA Waste Mgmt. Res., LLC*, 387 S.W.3d 92, 96 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding); *see also In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 226 n.3 (Tex. 2004) (under the

subject matter test, "the attorney-client privilege may apply to communications between attorneys and employees who are not executives or supervisors").

Hampton and Wilson were representatives of Union Pacific under Subsection 2(B) because their post-accident interviews fit squarely under both prongs of the subject matter test. First, they provided their statements at the request and direction of Green, a representative of Union Pacific and its in-house counsel. (MR:115-16, 120.) Moreover, their statements related to the performance of their duties as drivers for Union Pacific—the very matter for which Union Pacific had sought Rothman's legal advice. (MR:115-16, 120.) As a result, Hampton and Wilson were representatives of Union Pacific for purposes of the interviews. *See USA Waste Mgmt. Res., LLC*, 387 S.W.3d at 96 (holding that employee was representative of client where she gave interview with outside counsel and the communication related to the performance of her job duties). Because Green was also a client representative, as described above, the conversations were privileged under Rules 503(b)(1)(A)—communications between a representative of the client and the client's lawyer—and 503(b)(1)(D)—communications between representatives of the client.

The Trichels have nevertheless suggested that the recorded interviews were subject to disclosure as "witness statements" under Texas Rule of Civil Procedure 192.3(h). Not so. While the interviews may fit the description of a witness

statement, that does not render meaningless the protections of the attorney-client privilege. In fact, Comment 9 to the 1999 amendments says just that, noting that "[e]limination of the 'witness statement' exemption *does not render all witness statements automatically discoverable* but subjects them to the same rules concerning the scope of discovery and privileges applicable to other documents or tangible things." TEX. R. CIV. P. 192, cmt. 9 (emphasis added); *see also In re Fontenot*, 13 S.W.3d 111, 114 (Tex. App.—Fort Worth 2000, orig. proceeding) (holding that a broad rule requiring disclosure of all witness statements "would effectively abrogate the attorney-client privilege"). Put simply, it makes no difference that the recorded interviews might be described as "witness statements;" they are privileged attorney-client communications that are protected from disclosure.

And that is true regardless of the subject matter of the interviews themselves. The trial court seemed to believe that if the interviews covered only facts—*i.e.* what Hampton and Wilson remembered about the events leading up to the accident—then the statements would not be privileged. (MR:264; Supp.MR.) That is not correct. If the communications are made for the purposes of facilitating the rendition of legal services, they are privileged, regardless of whether the communications involve explicit legal advice or simply a discussion of factual information. *See In re Park Cities Bank*, 409 S.W.3d 859, 868 (Tex. App.—Tyler

2013, orig. proceeding) ("The subject matter of the information communicated is irrelevant when determining whether the privilege applies.").

Without any other options, the Trichels argued below that the recorded interviews are not privileged under the crime-fraud exception. *See* TEX. R. EVID. 503(d)(1). This argument is meritless, both as a matter of law and of fact. The crime-fraud exception applies *only* where "the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." *Id.* The Trichels have not offered a shred of evidence that Rothman was engaged to enable a crime or fraud, and their argument fails for this reason alone. *See USA Waste Mgmt. Res.*, 387 S.W.3d at 98 (holding that the requesting party "bears the burden of *proving* this exception" and "[m]ere allegations of fraud are insufficient") (emphasis added).

Moreover, the allegation of fraud at the center of the Trichels' strained theory is wrong as a matter of fact. The Trichels claim that Union Pacific committed fraud by "falsely plead[ing]" that it received the Trichels' letter of representation on April 17, 2014, rather than April 21. (MR:139.) However, Union Pacific's statement was correct. Union Pacific stated that "two days after the incident, on April 17, 2015 [*sic*],[7] Union Pacific received a letter of legal

---

[7] That date should be April 17, 2014, as reflected by the letter itself. (MR:113.)

representation on behalf of the Plaintiffs." (MR:44.) This is confirmed by the letter itself, which shows that the Trichels' attorney faxed the letter to two different Union Pacific fax numbers on April 17, 2014, a Friday. (MR:113.) While Rothman did not receive the letter from Union Pacific until early the following week (April 21st), that does not change the obvious fact that Union Pacific "received" the letter on the day the Trichels faxed it to Union Pacific—despite the imprecise language used in Rothman's response letter, sent the day *she* received it. (MR:233.)

In any event, this alleged "false pleading" (which is actually true) is irrelevant to the crime-fraud analysis because it was served only last week, roughly a year and half after the privileged communications occurred. (MR:45.) As even the Trichels admitted in their briefing below—and as required by the plain language of Rule 503(d)(1)—the crime-fraud exception only applies where the fraud occurred or was contemplated *at the time* of the privileged communication. *See In re AEP Tex. Central Co.*, 128 S.W.3d 687, 692 (Tex. App.—San Antonio 2003, orig. proceeding). The Trichels have made no such allegation, and their crime-fraud argument fails for this additional reason.

For all these reasons, the recorded interviews are protected by the attorney-client privilege and the trial court abused its discretion in ordering that Union Pacific produce them. Texas courts consistently grant mandamus in similar circumstances, and this Court should do so here. *See, e.g., In re Matthew Arden*,

2004 WL 576064 at *3-4 (Tex. App.—El Paso 2004, orig. proceeding) (granting mandamus where the trial court ordered the production of privileged communications between a driver and his insurance adjuster); *Fontenot*, 13 S.W.3d at 114 (granting mandamus where the trial court ordered production of a privileged letter between a physician, his insurance carrier, and his attorney).

### B. Union Pacific did not waive the privilege.

The Trichels have also suggested that Union Pacific waived any claim of privilege by disclosing the existence of the recorded interviews when it did. They are wrong. In fact, Union Pacific had no obligation to tell the Trichels about the statements in the first place, and it certainly did not waive the privilege by doing so out of an abundance of caution and good faith.

The Trichels' argument below reflected an outdated understanding of the Texas rules for asserting a privilege. They claimed that Union Pacific was "required to object" to their discovery requests if they intended to claim any kind of privilege as to the recordings and transcripts. (MR:142.) The Rules of Civil Procedure say precisely the opposite. TEX. R. CIV. P. 193.2(f) ("A party *should not object* to a request for written discovery on the grounds that it calls for production of material or information that is privileged but should instead comply with Rule 193.3.") (emphasis added); *see also Park Cities Bank*, 409 S.W.3d at 870 ("No objection needs to be made to preserve a privilege, and the rules set no time limit

- 13 -

for asserting a privilege.").[8] Instead, the Rules simply call for the producing party to withhold the privileged material and then—upon a request from the other side—describe the withheld materials in a way that allows other parties to assess the applicability of the privilege. TEX. R. CIV. P. 193.3(a), (b). This is typically done through a privilege log.

However, the Rules also contain a significant exception from those requirements, one that applies in this case. Under Rule 193.3(c), a producing party has *no obligation* to identify or describe its withholding of "a privileged communication to or from a lawyer or lawyer's representative . . . (1) created or made from the point at which a party consults a lawyer with a view to obtaining professional legal services from the lawyer in the prosecution or defense of a specific claim in the litigation in which discovery is requested, and (2) concerning the litigation in which the discovery is requested." TEX. R. CIV. P. 193.3(c); *see also* TEX. R. CIV. P. 193, cmt. 3 ("A party need not state that material created by or for lawyers for the litigation has been withheld as it can be assumed that such material will be withheld from virtually any request on the grounds of attorney-client privilege or work product.").

---

[8] Moreover, the Trichels' authority for their waiver argument was based on an inaccurate citation. They claimed that Rule 193.3(e) provides for a waiver of any objection if not made within the time required. (MR:143.) Not so. The provision they quoted actually appears in Rule 193.**2**(e)—immediately before noting that no objection is required in the first place to preserve a claim of privilege. Simply put, the Trichels' argument rests on a non-existent premise.

- 14 -

The recorded interviews with Hampton and Wilson are precisely that kind of communication. As described above, the interviews involved privileged communications to Union Pacific's outside litigation counsel (Rothman). (MR:115-16, 120.) The interviews were conducted at a point where Union Pacific had consulted a lawyer in order to obtain professional legal services in the defense of the very claims asserted in this action. (MR:115-16, 120.) Finally, the privileged communications concerned this litigation, as they related to Hampton's and Wilson's impressions of the accident so that Rothman could begin preparing a defense of the asserted claims. (MR:115-16, 120.) In short, the recorded interviews fit neatly within the exception of Rule 193.3(c); there was no need to include them on the privilege log; and Union Pacific certainly did not waive the privilege by disclosing their existence to the Trichels out of an abundance of caution and a show of good faith.

In any event, even if the requirements of Rule 193.3 apply (and they do not), Union Pacific properly asserted its privilege. As soon as Union Pacific's counsel became aware of the recently retrieved recorded interviews located by Green and determined that they should be withheld from production, she complied with Rule 193.3 by: (1) stating that the recordings had been withheld and describing the applicable privileges; and (2) generally describing the materials in Union Pacific's supplemental privilege log. (MR:122, 124-27.) Thus, she did exactly what the rule

drafters contemplated when privileged material is identified after an initial response. TEX. R. CIV. P. 193, cmt. 3 (noting that a withholding statement "should not be made prophylactically, but only when specific information and materials have been withheld. The party must amend or supplement the statement if additional privileged information or material is found subsequent to the initial response"). Because Union Pacific did just that, it complied with any discovery obligation it might have had and the privilege was not waived.

## II.     Union Pacific has no adequate remedy by appeal.

The trial court's error leaves Union Pacific with no adequate remedy by appeal. Once a party has erroneously been required to produce privileged information, the privilege bell cannot be unrung. *See Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992) (acknowledging that after privileged documents have "been inspected, examined and reproduced . . . a holding that the court had erroneously issued the order [compelling production] would be of small comfort to relators in protecting their papers").

For this reason, the Texas Supreme Court has repeatedly held that "appeal is inadequate when a trial court erroneously orders the production of confidential information or privileged documents." *In re Ford Motor Co.*, 211 S.W.3d 295, 298 (Tex. 2006) (orig. proceeding) (citing *In re University of Tex. Health Ctr.*, 33 S.W.3d 822, 827 (Tex. 2001)); *see also Arden*, 2004 WL 576064, at *4 (appeal is

not adequate where the trial court has erroneously ordered the disclosure of privileged information because "an appellate court would be unable to cure such error"). Union Pacific therefore has no adequate remedy by appeal because if it is forced to disclose the recordings and transcripts, the privilege over those communications will forever be lost. This Court should issue a writ of mandamus.

## CONCLUSION AND PRAYER

Union Pacific respectfully requests that this Court (1) grant this mandamus petition, (2) issue a writ of mandamus directing the trial court to vacate its order requiring the disclosure of the recorded interviews between its outside litigation counsel and its employees, and (3) grant all further relief to which Union Pacific is entitled.

Respectfully submitted,

HAYNES AND BOONE, LLP


 */s/ Kent Rutter*

Kent Rutter
State Bar No. 00797364
Christina Crozier
State Bar No. 24050466
Andrew Guthrie
State Bar No. 24078606
1221 McKinney, Suite 2100
Houston, Texas 77010-2007
Telephone: (713) 547-2000
Telecopier: (713) 547-2600
*Kent.Rutter@haynesboone.com*
*Christina.Crozier@haynesboone.com*
*Andrew.Guthrie@haynesboone.com*

KANE RUSSELL COLEMAN & LOGAN PC

Marcy Lynn Rothman
State Bar No. 17318500
M. Daniel Guerra
State Bar No. 00793865
5051 Westheimer Road, 10th Floor
Houston, Texas 77056
Telephone: (713) 425-7444
Telecopier: (713) 425-7700
*MRothman@krcl.com*
*DGuerra@krcl.com*

ATTORNEYS FOR RELATOR,
UNION PACIFIC RAILROAD COMPANY

# VERIFICATION

STATE OF TEXAS §

§

COUNTY OF HARRIS §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Marcy Lynn Rothman, who, being by me duly sworn on her oath, deposed and said that she is an attorney for Relator, Union Pacific Railroad Company; that she has read the foregoing Petition for Writ of Mandamus; that every factual statement in the petition is supported by competent evidence included in the appendix or record; and that the documents included in the Appendix to the Petition for Writ of Mandamus are true and correct copies of the originals.

_____
Marcy Lynn Rothman

SUBSCRIBED AND SWORN TO BEFORE ME, this 27th day of October, 2015.

DEBBIE SHAREE WILSON
Notary Public
STATE OF TEXAS
My Comm Exp April 01 2019

_____
Notary Public in and for
the State of Texas

- 19 -

## CERTIFICATE OF COMPLIANCE
## TEX. R. APP. P. 9.4(i)(3)

I hereby certify that this Petition contains a total of **3,958** words, excluding the parts of the petition exempted under TEX. R. APP. P. 9.4(i)(1), as verified by Microsoft Word 2010. This Petition is therefore in compliance with TEX. R. APP. P. 9.4(i)(2)(B).

Dated: October 27, 2015.

*/s/ Kent Rutter*
Kent Rutter
*Counsel for Relator,*
*Union Pacific Railroad Company*

# CERTIFICATE OF SERVICE

In accordance with the Texas Rules of Appellate Procedure, the undersigned hereby certifies that a true and correct copy of the *Petition for Writ of Mandamus* has been served on Respondent and the following counsel of record via e-service on this 27th day of October, 2015:

*Respondent:*

Honorable Kyle Carter
125th District Court
201 Caroline, 10th Floor
Houston, Texas 77002

*Counsel for Real Parties in Interest, Donald and Mary Trichel, Individually and as Next Friends of Nicholas Trichel:*

Vuk S. Vujasinovic
Brian Beckcom
VB ATTORNEYS, PLLC
6363 Woodway, Suite 400
Houston, Texas 77057

Dale Jefferson
Levon Hovnatanian
MARTIN, DISIERE, JEFFERSON & WISDOM
Niels Esperson Building
808 Travis, 20th Floor
Houston, Texas 77002

*Counsel for Real Party in Interest Jeremy Ray Hampton:*

Adolfo R. Rodriguez, Jr.
Wilson C. Aurbach
Christopher K. Rusek
RODRIGUEZ LAW FIRM, P.C.
1700 Pacific Ave., Suite 3850
Dallas, Texas 75201

*/s/ Kent Rutter*
Kent Rutter

## APPENDIX

Tab A      —      October 27, 2015 letter from Kenneth Fenelon, counsel for the Trichels, attaching proposed order

Tab B      —      TEX. R. EVID. 503

Tab C      —      TEX. R. CIV. P. 193.3

# TAB A

October 27, 2015 letter from Kenneth Fenelon,
counsel for the Trichels, attaching proposed order



**VB ATTORNEYS**
www.VBAttorneys.com

6363 Woodway Drive
Suite 400
Houston, TX 77057

Tel  (713) 224-7800
Fax (713) 224-7801

**Kenneth Fenelon**
ATTORNEY

October 27, 2015

Attn: Bridgett Stanfield
Court Coordinator for the 125th District Court
201 Caroline
Houston, Texas 77002

      Re: Cause No. 2014-23177, Trichel vs. Union Pacific Railroad Company, et al., In the 125th District Court, Harris County, Texas

      Proposed Order

Dear Mrs. Stanfield:

      Please find attached the proposed order requested by the Court earlier today during the conference call set by the Court.

                  Sincerely,

                  /s/ *Kenneth Fenelon*
                  *VB Attorneys*
                  *Attorney for Plaintiffs*

*Certificate of Service:* The undersigned authority hereby certifies that a true and correct copy of the foregoing instrument has been electronically served upon all counsel of record via email through the Court's electronic filing system on 27th day of October 2015.

                  /s/ *Kenneth Fenelon*

                  **Kenneth Fenelon**

Cause No. 2014-23177

| | | |
|---|---|---|
| Donald And Mary Trichel, Individually | § | In The District Court Of |
| And As Next Friends Of Nicholas Trichel | § | |
| | § | |
| Vs. | § | Harris County, Texas |
| | § | |
| Union Pacific Railroad Company and | § | |
| Jeremy Ray Hampton | § | 125th Judicial District |

**Order**

On this day came on for consideration the discoverability of the recorded witness statements of Jeremy Ray Hampton and James Wilson and *Defendant Union Pacific Railroad Company's Brief in Opposition to Production of Employee Statements and Conditional Motion to Stay, The Trichels' Brief in Support of the Discoverability of the Statements of Hampton and Wilson, The Trichels' Supplement to Brief in Support of the Discoverability of the Statements of Hampton and Wilson, and Defendant Jeremy Hamptons Response to Trichels' Supplement to Brief in Support of the Discoverability of the Statements of Hampton and Wilson*, and the Court, having read the briefs of counsel, heard arguments of counsel, and having conducted an *in camera* review of the recorded witness statements, is of the opinion that the witness statements are discoverable and must be produced. All objections and/or privileges raised by Defendants Union Pacific Railroad Company and Jeremy Hampton are overruled and all relief requested by Defendants Union Pacific Railroad Company and Jeremy Hampton is denied.

It is therefore ORDERED that Defendants Union Pacific Railroad Company and Jeremy Hampton produce the actual audio recordings of both statements and a copy of the transcription of both statements immediately.

Signed _____, 2015.

_____
JUDGE PRESIDING

# TAB B

TEX. R. EVID. 503

Vernon's Texas Rules Annotated
    Texas Rules of Evidence (Refs & Annos)
        Article V. Privileges (Refs & Annos)

TX Rules of Evidence, Rule 503

Rule 503. Lawyer-Client Privilege

Currentness

**(a) Definitions.** In this rule:

**(1)** A "client" is a person, public officer, or corporation, association, or other organization or entity--whether public or private--that:

**(A)** is rendered professional legal services by a lawyer; or

**(B)** consults a lawyer with a view to obtaining professional legal services from the lawyer.

**(2)** A "client's representative" is:

**(A)** a person who has authority to obtain professional legal services for the client or to act for the client on the legal advice rendered; or

**(B)** any other person who, to facilitate the rendition of professional legal services to the client, makes or receives a confidential communication while acting in the scope of employment for the client.

**(3)** A "lawyer" is a person authorized, or who the client reasonably believes is authorized, to practice law in any state or nation.

**(4)** A "lawyer's representative" is:

**(A)** one employed by the lawyer to assist in the rendition of professional legal services; or

**(B)** an accountant who is reasonably necessary for the lawyer's rendition of professional legal services.

**(5)** A communication is "confidential" if not intended to be disclosed to third persons other than those:

**(A)** to whom disclosure is made to further the rendition of professional legal services to the client; or

**(B)** reasonably necessary to transmit the communication.

**(b) Rules of Privilege.**

**(1)** *General Rule*. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client:

**(A)** between the client or the client's representative and the client's lawyer or the lawyer's representative;

**(B)** between the client's lawyer and the lawyer's representative;

**(C)** by the client, the client's representative, the client's lawyer, or the lawyer's representative to a lawyer representing another party in a pending action or that lawyer's representative, if the communications concern a matter of common interest in the pending action;

**(D)** between the client's representatives or between the client and the client's representative; or

**(E)** among lawyers and their representatives representing the same client.

**(2)** *Special Rule in a Criminal Case.* In a criminal case, a client has a privilege to prevent a lawyer or lawyer's representative from disclosing any other fact that came to the knowledge of the lawyer or the lawyer's representative by reason of the attorney-client relationship.

**(c) Who May Claim.** The privilege may be claimed by:

**(1)** the client;

**(2)** the client's guardian or conservator;

**(3)** a deceased client's personal representative; or

**(4)** the successor, trustee, or similar representative of a corporation, association, or other organization or entity--whether or not in existence.

The person who was the client's lawyer or the lawyer's representative when the communication was made may claim the privilege on the client's behalf--and is presumed to have authority to do so.

**(d) Exceptions.** This privilege does not apply:

**(1)** *Furtherance of Crime or Fraud.* If the lawyer's services were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud.

**(2)** *Claimants Through Same Deceased Client.* If the communication is relevant to an issue between parties claiming through the same deceased client.

**(3)** *Breach of Duty By a Lawyer or Client.* If the communication is relevant to an issue of breach of duty by a lawyer to the client or by a client to the lawyer.

**(4)** *Document Attested By a Lawyer.* If the communication is relevant to an issue concerning an attested document to which the lawyer is an attesting witness.

**(5)** *Joint Clients.* If the communication:

**(A)** is offered in an action between clients who retained or consulted a lawyer in common;

**(B)** was made by any of the clients to the lawyer; and

**(C)** is relevant to a matter of common interest between the clients.

**Credits**

Eff. March 1, 1998. Amended by orders of Supreme Court March 10, 2015 and Court of Criminal Appeals March 12, 2015, eff. April 1, 2015.

**Editors' Notes**

**NOTES AND COMMENTS**

**Comment to 1998 change:** The addition of subsection (a)(2)(B) adopts a subject matter test for the privilege of an entity, in place of the control group test previously used. See *National Tank Co. v. Brotherton*, 851 S.W.2d 193, 197-198 (Tex. 1993).

Notes of Decisions (424)

Rules of Evid., Rule 503, TX R EVID Rule 503

Rules of Civil Procedure, Rules of Evidence, and Rules of Appellate Procedure are current with amendments received through September 1, 2015. Bar Rules, Rules of Disciplinary Procedure, Code of Judicial Conduct, and Rules of Judicial Administration are current with amendments received through September 1, 2015. Other state court rules and selected county rules are current with rules verified through June 1, 2015.

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# TAB C

TEX. R. CIV. P. 193.3

Vernon's Texas Rules Annotated

  Texas Rules of Civil Procedure

    Part II. Rules of Practice in District and County Courts

      Section 9. Evidence and Discovery (Refs & Annos)

        B. Discovery

          Rule 193. Written Discovery: Response; Objection; Assertion of Privilege; Supplementation and
          Amendment; Failure to Timely Respond; Presumption of Authenticity

**TX Rules of Civil Procedure, Rule 193.3**

**193.3. Asserting a Privilege**

Currentness

A party may preserve a privilege from written discovery in accordance with this subdivision.

(a) *Withholding Privileged Material or Information.* A party who claims that material or information responsive to written discovery is privileged may withhold the privileged material or information from the response. The party must state--in the response (or an amended or supplemental response) or in a separate document--that:

  (1) information or material responsive to the request has been withheld,

  (2) the request to which the information or material relates, and

  (3) the privilege or privileges asserted.

(b) *Description of Withheld Material or Information.* After receiving a response indicating that material or information has been withheld from production, the party seeking discovery may serve a written request that the withholding party identify the information and material withheld. Within 15 days of service of that request, the withholding party must serve a response that:

  (1) describes the information or materials withheld that, without revealing the privileged information itself or otherwise waiving the privilege, enables other parties to assess the applicability of the privilege, and

  (2) asserts a specific privilege for each item or group of items withheld.

(c) *Exemption.* Without complying with paragraphs (a) and (b), a party may withhold a privileged communication to or from a lawyer or lawyer's representative or a privileged document of a lawyer or lawyer's representative--

  (1) created or made from the point at which a party consults a lawyer with a view to obtaining professional legal services from the lawyer in the prosecution or defense of a specific claim in the litigation in which discovery is requested, and

  (2) concerning the litigation in which the discovery is requested.

(d) *Privilege Not Waived by Production.* A party who produces material or information without intending to waive a claim of privilege does not waive that claim under these rules or the Rules of Evidence if--within ten days or a shorter time ordered by the court, after the producing party actually discovers that such production was made--the producing party amends the response, identifying the material or information produced and stating the privilege asserted. If the producing party thus amends the response to assert a privilege, the requesting party must promptly return the specified material or information and any copies pending any ruling by the court denying the privilege.

**Credits**

Aug. 5, 1998 and Nov. 9, 1998, eff. Jan. 1, 1999.

Notes of Decisions (60)

Vernon's Ann. Texas Rules Civ. Proc., Rule 193.3, TX R RCP Rule 193.3

Rules of Civil Procedure, Rules of Evidence, and Rules of Appellate Procedure are current with amendments received through September 1, 2015. Bar Rules, Rules of Disciplinary Procedure, Code of Judicial Conduct, and Rules of Judicial Administration are current with amendments received through September 1, 2015. Other state court rules and selected county rules are current with rules verified through June 1, 2015.

**End of Document**　　　　　　　　　　　　　© 2015 Thomson Reuters. No claim to original U.S. Government Works.